77589. BURROUGHS v. THE STATE.
77590. KING v. THE STATE.
(379 SE2d 175)

BEASLEY, Judge.

Following the denial of their motions for new trial, Latashe Dee Burroughs appeals her bench conviction and sentence for trafficking in cocaine, OCGA § 16-13-31 (a), and co-defendant Eugene King, Jr., appeals his bench conviction and sentence for possession of cocaine, OCGA § 16-13-30, in violation of the Georgia Controlled Substances Act, OCGA § 16-13-20 et seq. Orders of nolle prosequi were entered on one count of trafficking in cocaine, OCGA § 16-13-31 (a), and two counts of possession of a firearm by a convicted felon, OCGA § 16-11-131, as to King and on one count of possession of a firearm during commission of a crime, OCGA § 16-11-106, as to both defendants.

The defendants filed various pretrial motions, including ones to suppress and to reveal the identity of the informant. A hearing on the motions was held. King did not appear, so the trial court reserved ruling on his motions until such time as he was arrested and jailed. The court denied Burroughs' motions to suppress and to reveal the identity of the informant and reserved final ruling on severance. Defendants waived their rights to trial by jury.

Eight days after the motions hearing, another hearing was held at which time the trial court determined that the earlier rulings on Burroughs' motions would be the same with respect to King's. It also ac-

knowledged that defendants had agreed to a bench trial, stipulating as facts those gleaned at the motions hearing, with a reservation of all rights by both defendants to appeal the ruling on the motion to suppress.

The stipulated evidence when viewed in a light most favorable to the verdict, *Thomas v. State*, 175 Ga. App. 873, 874 (1) (334 SE2d 903) (1985), showed the following: Between 2:00 and 3:30 p.m., Atlanta police made two drug arrests. The arrests were made after the arrestees sold a police detective five ounces of cocaine. The arrestees told police that they had received cocaine from a black female named DeDee who was accompanied by a black male known as Gino. The arrestees had already gotten in the neighborhood of three to five ounces of cocaine from DeDee. They gave police DeDee's address in Decatur and the fact that she was known to drive a new maroon Subaru with a Boomershine drive-out tag. The police checked certain personal information that the arrestees had given about themselves, and a detective took the arrestees on a "ride-by" of the address of their alleged suppliers. The arrestees pointed out the location, the vehicle, and the apartment or condominium out of which DeDee and Gino were allegedly selling or distributing the drugs. The detective relayed the numbers and the vehicles that were there at that time. He then relayed the information to his supervisor who contacted the DeKalb County Police.

At approximately 3:45 or 4:00 p.m., the Atlanta police met with a DeKalb County detective. The detective learned that the arrestees said they could call DeDee and Gino and have four or five ounces of cocaine delivered just on a phone call. Around 5:30 or 6:00 p.m., the police had the arrestees call and arrange for a drug purchase. DeDee agreed to meet the arrestees at the Foto-Mat at South DeKalb Mall in about thirty minutes and to bring five ounces of cocaine.

Following the call, two officers did a surveillance of the suspects' location. They observed Burroughs and King exit, enter the maroon Subaru and leave. The officers followed them to Clarkston, temporarily lost them, and picked them back up again as they returned to I-285 and headed back towards South DeKalb Mall. Meanwhile, at the mall, the arrestees sat with police in an unmarked van from which arrestees could see but could not be seen.

At approximately 6:30 p.m., the maroon Subaru, driven by King with Burroughs as a passenger, entered the mall parking lot and pulled up to an unmarked vehicle in which a police officer sat. When the car drove into the lot, one of the arrestees yelled, "Here comes the car, here comes the car." One of the arrestees identified the male driver as Gino.

Defendants' car was stopped alongside the officer's unmarked car and defendants conversed with the officer. All of the officers in the

parking lot began to exit their vehicles, move in, and identify themselves as police officers. The Atlanta police officers were wearing flak jackets that had "Atlanta Police, Narcotics" on the back and caps with "Atlanta Police" on top. One DeKalb County detective had his badge on his vest. All officers were yelling "police" as they approached the car.

Driver King attempted to reach for something beneath the seat. The officers drew their weapons. King put his car in reverse and backed into the nearby unmarked police vehicle. As defendants' car came to rest, the officers around the car saw a gun lying on the console. King and Burroughs were arrested and searched. Burroughs was carrying a purse that contained her driver's license, checkbook, other pertinent information, a little more than five ounces of cocaine and $624 in cash. Approximately one ounce of cocaine was found in King's pants pocket. A Smith & Wesson .357 was found in the car's glove box and a television was found in the backseat.

1. Appellants contend that the evidence was insufficient to uphold their convictions.

a) Burroughs claims that she was not in actual possession of any cocaine, that she was merely a passenger in a car in which a purse was found containing five ounces of cocaine and that there was no evidence indicating she knew there was cocaine in her purse. She further contends that she was not the owner or driver of the car and others had equal access to the car and its contents.

A conviction for trafficking in cocaine under OCGA § 16-13-31 (a) does require a finding of actual and not constructive possession. *Lockwood v. State*, 257 Ga. 796, 798 (364 SE2d 574) (1988). "A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." Id. at 797.

There was evidence that Burroughs had direct physical control over the purse containing the approximately five ounces of cocaine because there was evidence that she was found carrying it and that it held her driver's license, checkbook, and other pertinent information. See as persuasive *Bonds v. State*, 188 Ga. App. 135 (372 SE2d 448) (1988), wherein the defendant was convicted of, inter alia, violation of OCGA § 16-13-31 (a) after defendant's purse containing the contraband was found a few inches away directly next to defendant, who was sitting on a couch alone. Here, there was much more than mere "spatial proximity" as appellant suggests. See *McCann v. State*, 137 Ga. App. 445, 446 (2) (224 SE2d 99) (1976). Furthermore, the factfinder was permitted to infer guilt from evidence of defendants' flight. *Cohran v. State*, 157 Ga. App. 551, 552 (1) (278 SE2d 133) (1981).

Burroughs' equal-access argument also fails. She relies on the claims that she was accompanied by driver King and that the car belonged to a third party and was just temporarily loaned to defendants

that day. But the contraband in dispute was not found in the general space of the car but rather in her purse over which there was evidence of her direct control and no evidence of access or control by others. The equal-access rule is inapplicable where the State's evidence is that the defendant actually and physically possessed the contraband. *Marshall v. State*, 153 Ga. App. 198, 200 (5) (264 SE2d 718) (1980).

The evidence was sufficient to enable any rational trier of fact to find Burroughs guilty of trafficking in cocaine beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

b) King claims that there was no competent evidence that he was in possession of any amount of cocaine because the evidence consisted solely of hearsay and there was no expert testimony identifying the seized drugs as contraband, no stipulated crime lab report, and absolutely no testimony identifying any substance seized from him.

Contrary to appellant's assertion, there was testimony regarding the seized substance. On direct, a DeKalb County detective involved in the arrests testified that King was "searched on the scene by, I believe, Detective . . . and approximately one ounce of cocaine was found in his pocket, pants pocket."

This statement about the contraband found on King was not shown to be hearsay because on its face the statement derives its value from the credit of the testifying detective. OCGA § 24-3-1. Although the testifying detective states that King was searched by another he does not indicate that the knowledge of the found contraband was anything other than personal knowledge. This evidence was not without probative value.

Furthermore, identification of a material or substance may be made by other than expert testimony. See, e.g., *Wortham v. State*, 158 Ga. App. 19, 20 (2) (279 SE2d 287) (1981). But that is not even at issue because the detective was not rendering *his opinion* as an expert, see OCGA § 24-9-67, or otherwise, see OCGA § 24-9-65, about what the found substance was but rather was relating facts known or observed by him. King does not claim that the substance was anything other than cocaine. In fact, King stipulated the evidence adduced at the hearing. In any event, King did not object at the motions hearing to the detective's testimony about the contraband found on King; therefore, it was waived. *Allen v. State*, 152 Ga. App. 481, 482 (2) (263 SE2d 259) (1979).

The evidence was sufficient to support King's conviction for possession of cocaine. *Jackson v. Virginia*, supra.

2. Appellants contend that the search and seizure of the evidence violated the Fourth, Fifth and Fourteenth Amendments of the Federal Constitution; Art. I, Sec. I, Par. XIII of the State Constitution; and OCGA § 17-5-1, in four particulars which raise four questions.

a) Was the search and seizure the product of illegal arrests because there was no probable cause to make the arrests?

Although appellants call upon the State Constitution as well, the numerous authorities cited are either United States Supreme Court cases or Georgia cases which apply that court's standard and/or the state statutory law; therefore, we do not deal with appellants' claims under the State Constitution. See *Lovell v. State*, 178 Ga. App. 366 (1) (343 SE2d 414) (1986). We note that in *Durden v. State*, 250 Ga. 325 (297 SE2d 237) (1982), cited by appellants, our Supreme Court in discussing when a warrantless arrest is valid under the Federal Constitution and state statutes determined that "[a]n arrest and search, legal under federal law, are legal under state law." Id. at 327 (1).

"The validity of the arrest[s] under the United States Constitution depends 'upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (defendants) had committed or [were] committing an offense.' [Cits.]" *Lovell v. State*, supra at 367 (1).

The police had verified much of the pertinent information given by the arrestees, specifically information about their suppliers' whereabouts, car, and willingness to arrange a drug buy with a telephone call. Appellants who fit the physical descriptions given by the arrestees arrived at the arranged time and place for the drug transaction and in the vehicle also described by the arrestees. Compare *Stanley v. State*, 129 Ga. App. 759 (201 SE2d 182) (1973) wherein the informants gave no information to the police as to the defendant's name, physical description, or where he could be located. The cumulative effect of the arrestee's reliable information and the officers' own observations provided the initial probable cause to believe that a crime was being committed. *Weaver v. State*, 145 Ga. App. 194, 195 (1) (243 SE2d 560) (1978).

Additionally, immediately prior to appellants' arrests they attempted to flee the approaching officers, strengthening the probable cause authorizing the arrests. See *Watson v. State*, 153 Ga. App. 545, 547 (1) (265 SE2d 871) (1980) which discusses this in the context of the federal standard and Code Ann. § 27-207 (a) (OCGA § 17-4-20).

b) Was there a lack of probable cause because the information from the informer was not shown to be reliable and trustworthy, sufficient to authorize a stop under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), a search or an arrest?

The information supplied by the arrestees was sufficiently reliable and trustworthy. The arrestees produced five ounces of cocaine which they claimed to have received from appellants and disclosed

prior dealings in illegal substances with appellants, thus explaining the basis of their knowledge about appellants' activities. The arrestees, by volunteering information about their illegal transactions with appellants, subjected themselves to further potential criminal prosecution. Such actions against their penal interests support the conclusion that they were speaking truthfully. *Weaver v. State*, supra at 195 (1)-196.

c) Did the officers have sufficient time and opportunity to get a warrant?

"Searches are conducted either with or without a search warrant. '(T)he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment . . . subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." ' [Cit.]" *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865) (1984).

The State carried its burden of showing the exigency of the situation. It presented evidence that the police did not have sufficient time to obtain warrants because they were working with "street-level drugs" rather than "major violators"; the procedure in such a situation was to react as quickly as possible, to check out the information and act on it so it would not become stale; experience had shown that once the arrestee/informer is in jail others soon find out and the arrestee's drug connections "dry up."

d) Were searches of defendants outside of authorized *Terry* searches, and was the search of Burroughs' purse unauthorized?

Appellants' arrests were lawful; therefore, searches of them were lawful as incident to the arrests. OCGA § 17-5-1. The search of Burroughs' purse was authorized as it was in " 'the area within [her] immediate presence.' " *Smallwood v. State*, 166 Ga. App. 247 (2) (304 SE2d 95) (1983). Moreover, the exigent circumstances including the fact that officers spied a gun on the console of appellants' car authorized them to search the purse to eliminate the possibility of its containing a weapon dangerous to themselves. See *Dennis v. State*, 166 Ga. App. 715, 717 (305 SE2d 443) (1983).

Burroughs takes issue with the fact that the officer did not feel her purse for a weapon before opening it. "[I]t would be reasonable to believe that if a woman with a purse had a weapon it would be in the purse rather than on her person. . . . Merely patting down a purse, even if it was pliable, would not [reveal a weapon to the touch] as the nature of the objects felt would not necessarily identify them as non-

weapons. The search for weapons must only 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' [Cit.]

"With regard to the weapons aspect, this was nothing more nor less, at the least, than a *Terry*-type search of the purse to which [Burroughs] had access when the police arrived . . . . [Cit.] That is, it was an authorized protective search for weapons." *Bonds v. State*, supra at 137, 138.

3. Lastly, appellants contend that in denying their motions to reveal the identity of the informer the trial court violated their Sixth Amendment rights of confrontation and their rights to due process.

"In *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639), the United States Supreme Court held that the government's privilege to withhold from disclosure the identity of a confidential informant is limited by the underlying purpose of the privilege itself and 'the fundamental requirements of fairness.' Id. at 60. Thus, the court concluded that '(w)here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' Id. at 60-61. The Supreme Court declined to adopt a fixed rule of disclosure, opting instead for a balancing test which would balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.' Id. at 62. The resolution of each case, accordingly, depends on the particular circumstances involved, 'taking into consideration the crime charged, the possible defenses, the *possible* significance of the informer's testimony, and other relevant factors.' (Emphasis supplied.) Id. at 62. . . .

"In the keystone case of *Thornton v. State*, 238 Ga. 160 (231 SE2d 729), cert. den. 434 U. S. 1073, our Supreme Court, after reaffirming Georgia's policy against nondisclosure of an informant's identity, unequivocally embraced the *Roviaro* balancing test as 'it is now well established as the law of Georgia.' Id. at 163-164." *Moore v. State*, 187 Ga. App. 387, 389 (2) (370 SE2d 511) (1988).

Assuming that the arrestees could best be characterized as informers and limited participants, the critical inquiry then is whether their possible testimony would have been highly relevant and might have helped appellants' defense. Id. at 390 (2).

The arrestees gave police appellants' names, addresses, and descriptions, visually identified appellants' location, and then arranged to buy cocaine from appellants at a specified time and place. When appellants arrived at the arranged time and place for the sale, the arrestees were in an unmarked police van out of view of appellants. When the police began to close in on appellants but before appellants exited from their car, the arrestees were driven from the scene. They

did not participate at that point in the drug transaction nor actually witness it. Thus, their testimony would not have materially and favorably affected the facts that appellants came to the arranged sale scene in possession of cocaine sufficient for Burroughs to be guilty of trafficking in cocaine and for King to be guilty of possession of cocaine. OCGA §§ 16-13-31 (a); 16-13-30. In other words, their testimony would not have materially affected appellants' defenses to the charges. Id.

The appellants' Federal Constitutional rights of confrontation and due process were not violated by the trial court's refusal to compel disclosure of the arrestees'/informers' identities.

*Judgments affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 8, 1989 —
REHEARING DENIED FEBRUARY 27, 1989 — ▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*J. M. Raffauf*, for appellants.

*Robert E. Wilson, District Attorney, Eleni A. Pryles, Robert M. Coker, Assistant District Attorneys*, for appellee.