A93A2236. WELLS v. THE STATE.
(441 SE2d 460)

MCMURRAY, Presiding Judge.

Defendant was indicted along with Lynn Windom Ellington and Elijah Tompkins for trafficking in cocaine. Elijah Tompkins entered a plea of guilty to the reduced charge of possession of cocaine and Lynn Windom Ellington pled guilty to possession of cocaine with intent to distribute. Defendant was tried before a jury and found guilty of trafficking in cocaine.

At trial, Investigator Wayne Cain of the Dublin Police Department testified, in pertinent part, as follows: "On the afternoon of January 24, 1992 I received a phone call from a confidential informant. The informant advised that he knew [defendant], Lynn Ellington and Elijah Tompkins were traveling in [defendant's] 1974 Grand Torino. They had gone to Atlanta for the purpose of picking up an amount of cocaine. [STATE'S ATTORNEY]. Now had you previously received other information that proved to be reliable from this informant? A. Yes, I had, on several occasions. Q. And, basically, what else did the informant tell you? A. The informant included that [defendant] was supposed to purchase approximately one ounce of cocaine and that it was assumed that Elijah Tompkins would get an equal amount. I was advised that they had already left and should already be well in route to Atlanta, but that they would be coming back that same day and they would be traveling on I-16, both from Dublin to Atlanta and then back that same route. Q. What kind of vehicle would they be traveling in? A. In [defendant's] Ford Grand Torino. Q. What color is it? A. Black. Q. Did you know the car? A. Yes, I did. I was very familiar with the car including the fact that I had the tag number. Q. Okay. Now, based on this information that you received, what action did you take? A. There are several exits from I-16 that lead to Dublin. I wanted to set up surveillance so I could intercept [defendant] after he came back to Dublin, but I didn't want to take a chance of

setting up too far east and him turning off on one of these exists. Therefore, I contacted the Bleckley County Sheriff's office and talked with Investigator Jon Thrower. . . . I also contacted Agent Ted Fuqua who is an agent with our drug task force and I contacted Bucky Hobbs who is a parole officer in the Dublin office. . . . We met with Investigator Thrower and Deputy Lee Baggs there at 112 at I-16 [and] parked in the median of the interstate. . . . There were two vehicles. Myself and Agent Hobbs in my car and Deputy Lee Baggs in the deputy's car, Bleckley County. Q. And, approximately what time did you first see the vehicle being occupied by [defendant], Ellington and Tompkins? A. At approximately 10:20. Q. Okay. And, what did you all do once you saw the vehicle? A. We were parked directly beside each other talking. I believe Deputy Baggs saw the car first and said, 'There it is.' As soon as it came by us we immediately pulled out behind it. Deputy Baggs pulled directly in behind the car and me behind him. Deputy Baggs activated his blue lights and at that time [defendant] pulled over onto the emergency lane of the interstate but did not stop. He was continuing traveling between forty and fifty miles an hour. I pulled along the side of [defendant's] car because I thought at that time it was possible he could be trying to throw contraband out of the car. We suspected he would be carrying cocaine and it is common that people do throw cocaine out to avoid being arrested. So I pulled along beside him so I could observe what he was doing, and then [defendant] did stop. After [defendant] stopped, I got out. Agent Hobbs got out and Deputy Baggs got out and . . . I observed that [defendant] was, in fact, the driver of this car and I had already verified that that was, in fact, [defendant's] car by the tag number. Lynn Ellington was a passenger in the front seat. Elijah Tompkins was a passenger in the back seat along with a small child in a car seat. Elijah was acting as if he was poking something down into the seat of the car. At that time, I asked [defendant] to step out of the car. When I did [defendant] became sort of irate and I placed the handcuffs on him. Deputy Baggs then told Tompkins to get out of the car and he and parole officer Hobbs sort of escorted Tompkins out of the car. At that time, Deputy Baggs got in the back seat of the car and checked where Tompkins was poking down and pulled out cocaine. . . . Q. All right. After the cocaine was found, what did you all do with Elijah Tompkins and [defendant]? A. They were both advised of their Miranda rights and they were taken back to the patrol car and set down in the patrol car. Q. Did you have an occasion subsequent to that to have a conversation with Lynn Ellington? A. Yes, I did. Q. Where did that occur? A. Lynn was at — still at the front of [defendant's] car and I went back up to where she was at and I advised her of her Miranda rights. I advised her that I knew that they had just come from Atlanta and that I knew they were transporting

cocaine, but the amount was supposed to be larger than what we had already found, and I asked her was there anymore cocaine and she stated, yes, there was. I asked her where was it and she said, 'I've got it on me.' I told her to give it to me because I know Lynn and this was a fairly general conversation between her and I. I told her to give it to me. At that time she began crying and she said, 'Please don't tell [defendant] I told on him. Don't let him know that I gave it to you.' I told her as long as she would be truthful with us, I would do whatever I could to help her as far as keeping it from [defendant]. At that time I advised the other officers that I had recovered the second bag of cocaine. . . . Q. Now, did you have any further conversation with [Lynn Ellington] out at the scene about the involvement by the various ones whose cocaine this was? A. The only thing she said there at the scene was the fact that for me to please not tell [defendant] she had told on him. She was then transported to the Bleckley County Sheriff's office [where she said that] her and [defendant] were going to Atlanta and they saw Elijah and Elijah decided to go with them and that she knew that they were going to pick up cocaine. They went to Atlanta [and] went to her sister's house and that Elijah left, that [defendant] said he'd be back in a few minutes. Elijah did come back and they got back in the car and they came back toward Dublin. They stopped somewhere in route to Dublin and ate supper and were traveling east on 16 when the blue lights came on. She was fixing a drink and when the blue lights came on [defendant] told her to put the gin up and a bag of cocaine landed in her lap. To begin with, she said the [defendant] had put it in her lap. When I questioned her about that she changed it to where she didn't know who threw it in her lap, but that Elijah told her to put it in her pants. And, basically that was it."

This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant contends the trial court erred in denying his motion for mistrial after Investigator Cain injected defendant's character into evidence on cross-examination.

" ' "(A) party will not be heard to complain of error induced by his own conduct. . . . (Cits.)" (Cit.)' *Littlefield v. State*, 197 Ga. App. 343, 344 (2) (398 SE2d 375) (1990)." *Heard v. State*, 204 Ga. App. 757, 759 (4) (420 SE2d 639). In the case sub judice, defense counsel asked Investigator Cain whether defendant's conviction for a similar criminal act offered into evidence by the State "has now been concluded?" The investigator explained: "Larry was convicted on that charge, served time and was released from prison. They [sic] new charges caused the parole department to revoke his parole and he, as my understanding is now, back in prison on that original charge, so it's not concluded yet." The trial court found this answer responsive to defense counsel's question and denied defendant's motion for a

mistrial. We find no abuse of discretion in the trial court's finding that Investigator Cain's answer was responsive to defense counsel's question. Consequently, the trial court did not err in denying defendant's motion for mistrial.

2. Next, defendant contends the warrantless search of his automobile was made without probable cause.

Investigator Cain testified that he had been acquainted with the confidential informant for several years before the tip which led to defendant's arrest; that the confidential informant had provided reliable information in the past; that he has "made five separate narcotics cases from information provided by this informant that was proven reliable [and that these] five cases did involve arrest and convictions in the seizure of drugs." This testimony reveals that the confidential informer's tip "met the test of reliability. [Nonetheless, d]efendant argues the information was insufficient to support a warrantless search because the source of the informant's information was undisclosed. The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the 'totality of the circumstances' surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). '(A) deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' Id. at 233. [In the case sub judice], any deficiency in the basis of the informant's knowledge was adequately compensated by the informant's previous record of reliability. Moreover, the details of the tip were corroborated by the personal observation of the investigating officers. When coupled with corroboration by the personal observation of a police officer, a reliable informant's tip is sufficient to establish probable cause for a warrantless search. See *Draper v. United States*, 358 U. S. 307 (79 SC 329, 3 LE2d 327) (1959). . . . We also reject defendant's claim that the circumstances did not support a warrantless search of the automobile. It is well settled by *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925), and its progeny that an 'automobile exception' to the warrant requirement of the Fourth Amendment applies to the search of a vehicle as to which there is probable cause to believe it contains contraband." *McKinney v. State*, 184 Ga. App. 607, 608 (1), 609 (2) (362 SE2d 65).

3. Defendant contends the trial court erred in denying his motion to reveal the identity of the confidential informer.

" 'Public policy in Georgia favors nondisclosure of the identity of an informant in the interest of the free flow of information about criminal activity. (Cit.)' *Grimes v. State*, 168 Ga. App. 372, 376 (5) (308 SE2d 863) (1983). The identity of a mere tipster is privileged,

but where the informer is a witness or participant, or has entrapped a defendant into committing a crime, disclosure could be material to the defense. *State v. Royal*, 247 Ga. 309, 312 (275 SE2d 646) (1983); *Thornton v. State*, 238 Ga. 160 (2) (231 SE2d 729) (1977)." *Simmons v. State*, 208 Ga. App. 721, 722 (1), 723 (431 SE2d 721).

In the case sub judice, Investigator Cain's testimony reveals that the confidential informant was a tipster rather than a witness or participant in the crimes charged. Under these circumstances, the trial court did not err in denying defendant's motion to reveal the identity of the confidential informer.

4. Defendant contends the trial court erred in allowing similar transaction evidence regarding his 1989 conviction for possession of cocaine with intent to distribute, arguing there was no evidence presented establishing the similarity or connection between the independent offense and the crime for which he was on trial.

"Generally, on a prosecution for a particular crime, evidence of independent offenses committed by an accused is irrelevant and inadmissible. *Stephens v. State*, 261 Ga. 467 (405 SE2d 483) (1991). 'Before any evidence of an independent offense may be introduced, the state must show 1) that the evidence is relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; 2) that there is sufficient evidence to establish that the accused committed the independent offense or act; and 3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.' (Citations and punctuation omitted.) *Wooten v. State*, 262 Ga. 876, 880-881 (4) (426 SE2d 852) (1993). See also *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991); *Stephens v. State*, 261 Ga. at 469. 'There is *no* requirement that, to come within the other transaction exception, the other transaction must be *identical* in every respect. The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character.' (Citations and punctuation omitted.) *Collins v. State*, 205 Ga. App. 341, 343 (2) (422 SE2d 56) (1992). See also *Blige v. State*, 205 Ga. App. 133 (2) (421 SE2d 547) (1992)." *Cantrell v. State*, 210 Ga. App. 218, 220 (2) (435 SE2d 737).

In the case sub judice, the State presented a certified copy of defendant's May 11, 1989, conviction for possession of cocaine with intent to distribute. Investigator Cain testified that he was the officer involved in the investigation which led to defendant's prior conviction; that the prior conviction involved defendant's activities with a

girl friend in distributing cocaine from a boarding house in Dublin, Georgia; that the boarding house was owned by a relative of co-defendant Lynn Windom Ellington; that defendant gave his girl friend contraband when their apprehension by law enforcement officers was imminent and that defendant told his girl friend to conceal the cocaine in her body moments before his arrest. This evidence authorizes a finding that the circumstances underlying defendant's prior conviction are relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; that there is sufficient evidence to establish that defendant committed the prior criminal act and that there is a sufficient connection or similarity between the prior criminal act and the crime charged so that proof of the former tends to prove the latter. See *Cantrell v. State*, 210 Ga. App. 218, 220 (2), supra. Specifically, the circumstances underlying defendant's prior conviction for possession of cocaine with intent to distribute are substantially similar to justify admission of the prior criminal act for the purpose of proving defendant's motive, intent and course of conduct in completing the crime charged. Consequently, the trial court did not err in allowing the State to introduce defendant's May 11, 1989, conviction for possession of cocaine with intent to distribute as a prior similar act.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED FEBRUARY 14, 1994.

*Straughan & Straughan, William T. Straughan*, for appellant.

*James L. Wiggins, District Attorney, Timothy G. Vaughn, Russell P. Spivey, Assistant District Attorneys*, for appellee.