A01A0160. THE STATE v. BURNETT.
(548 SE2d 443)

ELLINGTON, Judge.

Gregory Scott Burnett was charged with trafficking in methamphetamine, OCGA § 16-13-31 (e). He filed a motion to suppress evidence, which the court granted. Pursuant to OCGA § 5-7-1 (a) (4), the State appeals. Because the arresting officer had probable cause to detain Burnett and search his car, the trial court erred in granting Burnett's motion. Therefore, we reverse.

In reviewing a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court. Where the evidence is uncontroverted and there is no question concerning the credibility of witnesses, we conduct a de novo review of the trial court's application of law to the undisputed facts. *State v. Stearns*, 240 Ga. App. 806, 807 (524 SE2d 554) (1999).

The State adduced these undisputed facts: On October 22, 1999, agents with the Appalachian Drug Task Force detained Burnett and searched his car based, in part, on information provided by a confidential informant ("CI"). Task Force Agent Champion testified that he worked with the CI on three previous occasions. The CI first made

---

[10] (Punctuation omitted.) *Florence v. State*, 246 Ga. App. 479, 481 (4) (539 SE2d 901) (2000).

contact with Agent Champion by calling him at his home in the middle of the night. The CI was not working with the authorities as a condition for favorable treatment for his own criminal activity. Information from the CI led to three arrests, two of which ended in convictions by the time of the suppression hearing. The third case was pending trial. One of the CI's tips resulted in the seizure of a methamphetamine lab. In this case, the CI telephoned Agent Champion and told him that he could arrange to purchase methamphetamine from Burnett. Agent Champion already knew of Burnett because the task force maintained a file on Burnett's suspected drug activities. It contained information provided by both known, reliable informants and anonymous tipsters.

Agent Champion and Agent Hughes responded to the CI's call and met with him to discuss buying drugs from Burnett. During this meeting, the CI told Agents Champion and Hughes that Burnett drove a white Grand Prix and carried a firearm with him. While Agent Champion watched and listened, the CI placed a phone call to Burnett from a pay phone and arranged for Burnett to bring the drugs to an Amoco gas station in Pickens County. Agent Champion heard only the CI's end of the telephone conversation. Agent Champion testified that the CI told him that Burnett would come to the Amoco station by way of Highway 515. He would be in a white Grand Prix and would be traveling with a friend. Agents Champion, Hughes, and others set up surveillance at the Amoco. A few hours later, Burnett arrived at the Amoco by way of Highway 515 in his white Grand Prix with a passenger. Burnett put gasoline in his car, and then both he and his passenger went inside the Amoco's convenience store. Agent Hughes believed that Burnett spotted the surveillance van because Burnett's demeanor changed suddenly — he started glancing around and appeared nervous and in a hurry. Burnett told his passenger to get back in the car. At that point, the agents gave the order to stop Burnett. Because Burnett reportedly had a firearm, the officers approached him with their weapons drawn. The agents removed Burnett and his passenger from the car, handcuffed them, and interviewed them. Agent Hughes read Burnett a consent to search form, which Burnett signed. The officers searched the car and found a loaded handgun located in the driver's door panel and a quantity of suspected methamphetamine.

1. The trial court erred in disregarding the probable cause evidence provided by the CI. The trial court assumed that the CI was an "informer-participant" and that because Agent Champion heard only one side of the CI's telephone conversation with Burnett, all the information provided by the CI was suspect. The trial court, therefore, asked the State to disclose the identity of the CI or Burnett's motion to suppress would be granted. This was improper.

The Supreme Court of Georgia stated that the strong public policy underlying the informer's privilege, OCGA § 24-9-27 (d), "is to protect and encourage the flow of information to law enforcement officials." *Thornton v. State*, 238 Ga. 160, 163 (2) (231 SE2d 729) (1977). Of course, that privilege is not absolute. It must be balanced against an accused's constitutional right to a full and fair opportunity to defend himself against the crime charged. Id. at 164. However, the Supreme Court of Georgia also held that the informer's privilege presents a question of evidentiary rather than constitutional magnitude at a motion to suppress hearing because the issue before the court is a preliminary one of probable cause and not of the defendant's guilt or innocence. *Keith v. State*, 238 Ga. 157, 158 (231 SE2d 727) (1977), citing *McCray v. Illinois*, 386 U. S. 300 (87 SC 1056, 18 LE2d 62) (1967).[1] Therefore, in the context of a motion to suppress, since the only issue is whether the information offered by the CI "meets the test for probable cause, there is no need to reveal the informer's identity." *Keith v. State*, 238 Ga. at 159. The Court concluded that the existence of and reliability of the CI could be tested through cross-examination of the police officers. Id.; see also *Butler v. State*, 185 Ga. App. 478, 480 (1) (364 SE2d 612) (1988) (defendant not permitted to cross-examine officer on identity of CI who provided tip leading to warrantless arrest for possession of marijuana); *Miller v. State*, 169 Ga. App. 552, 553 (1) (314 SE2d 120) (1984) ("[T]he trial court did not err in failing to compel the state to disclose the informant's identity in camera at the motion to suppress hearing."); *Scull v. State*, 122 Ga. App. 696, 700 (2) (178 SE2d 720) (1970) (in a drug possession case, when the only significance of the CI's testimony is to attack the validity of the officer's warrantless search, public policy supports the nondisclosure of the CI's identity). Consequently, the trial court erred in refusing to consider the information provided by the CI on the issue of probable cause.

2. Probable cause to search may be provided by information from a reliable CI. *Martin v. State*, 214 Ga. App. 388, 389 (448 SE2d 57) (1994). As we have held,

> [t]he sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliabil-

---

[1] This interpretation of the holding in *McCray* has been criticized. See LaFave, Search & Seizure (3rd ed.), § 3.3 (g). Nevertheless, we are bound by it.

ity of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citations and punctuation omitted.) *Wells v. State*, 212 Ga. App. 60, 63 (2) (441 SE2d 460) (1994). Further, when the details of a tip are corroborated "by the personal observation of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search." (Citation omitted.) *Dupree v. State*, 232 Ga. App. 573, 574 (502 SE2d 511) (1998); *Wells v. State*, 212 Ga. App. at 63 (2).

In this case, the information provided by the CI supplied the probable cause necessary to support the warrantless search of Burnett's car. Agent Champion's undisputed testimony was sufficient to show that the CI was reliable. Agent Champion had worked with the CI before, and the CI had previously provided information that led to the arrest and conviction of drug dealers. See *Wells v. State*, 212 Ga. App. at 63 (2). Agent Champion also testified that the CI was not providing information in exchange for leniency from the authorities.

The information provided by the CI was also verified by the officers' personal observations and by other indicia of reliability. The CI knew Burnett by name, knew the make and color of the car in which he would be arriving, knew the route he would take to the Amoco, and knew Burnett would be traveling with a passenger. These details were corroborated by both Agents Champion and Hughes. Also, Agent Champion was already aware that Burnett was reportedly involved in the methamphetamine trade based upon information he acquired independently of the CI. Further, the agents heard the CI make the phone call and set up the transaction. Finally, Agent Hughes noticed a sudden change in Burnett's behavior when it appeared Burnett spotted the surveillance team. Such furtive behavior not only validates the tip but is another factor to be taken into account in determining whether probable cause exists. See *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443) (1998). Therefore, even though the basis of the CI's knowledge was not fully developed, Agent Champion's previous experience with the CI coupled with the other evidence validating the tip compensated for that deficiency. This evidence was sufficient to establish probable cause for a warrantless search of Burnett's car. See *Wells v. State*, 212 Ga. App. at 60, 63 (2). Consequently, we must reverse the trial court's order granting Burnett's motion to suppress.

*Judgment reversed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED APRIL 24, 2001.

*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney*, for appellant.
*Teddy L. Henley*, for appellee.