## A03A1235. BILOW v. THE STATE.
### (586 SE2d 675)

BLACKBURN, Presiding Judge.

Following a jury trial, John A. Bilow appeals his conviction for manufacturing and trafficking in methamphetamine, contending that: (1) the evidence was insufficient to support the convictions; (2) the trial court erred in admitting similar transaction evidence; and (3) Bilow's trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.

We first address the standard of review applicable in this case.

> On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*.[1] The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation omitted.) *Green v. State*.[2]

Viewed in this light, the evidence shows that, on February 11, 2000, Lieutenant Charles Gunnels and Investigator Ted Darley, of the Middle Georgia Drug Task Force, properly executed a search warrant on Bilow and on the home of his brother Jimmy. When they arrived, Bilow was sitting on the back steps of the house. The officers discovered a backyard storage building with methamphetamine residue covering the floor and a fan blowing fumes out the window, and a nearby open pit containing smoldering chemical sludge. A few feet from Bilow were a respirator, rubber gloves, and several empty lighter fluid cans. Inside the house police found a tank of anhydrous ammonia, a gallon of denatured alcohol, nine boxes of antihistamine tablets, and a metal box containing a block of a sticky crystalized substance. Bilow volunteered that the substance was "Jimmy's dope."

At trial, Gunnels, who had taken 40 hours of DEA "lab school," and was instructed on "components needed to manufacture methamphetamine, what is needed, and how to recognize a lab, how to smell a lab, how to see a lab," explained how the materials, sludge, and smoldering chemicals found at the scene fit the "meth lab" profile. Gunnels specifically identified the substance found in the house as methamphetamine, based on its appearance and smell. Gunnels testified that in his 26 years of police experience, he had executed 20

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Green v. State*, 249 Ga. App. 546, 548-549 (1) (547 SE2d 569) (2001).

warrants for methamphetamine and supervised approximately 60 drug cases per month.

Investigator Darley, who had completed a 60-hour training course in identifying methamphetamine and the materials necessary to manufacture it, and who had been involved in at least 500 drug cases in his career, testified that, based on his training and experience, "there was definitely someone cooking meth on this location that we was at." Darley testified that, once inside the house, he observed "a hard substance that was to my knowledge methamphetamine." Darley explained why he thought it was, in fact, methamphetamine and testified that it weighed 77 grams. This evidence amply supported the verdict.

1. Bilow contends that the evidence was insufficient to support the verdict. Specifically, he contends that the State failed to provide any admissible evidence that the substance found in his possession was methamphetamine. The record belies this contention, as the evidence amply supports the verdict.

Bilow's contention that a crime lab report identifying the methamphetamine was improperly admitted does not alter this result. Even assuming the lab results were nonprobative hearsay, see *Priebe v. State*,[3] the detailed testimony by the officers provided the requisite evidence to convict Bilow. "It is well established that expert testimony is not necessary to identify a substance, including drugs. And even if police officers are not formally tendered as expert witnesses, if an adequate foundation is laid with respect to their experience and training, their testimony regarding narcotics is properly admitted." (Citations omitted.) *Atkinson v. State*.[4]

Nor do we find that the admission of the crime lab report was prejudicial. See *Priebe*, supra at 727. In light of the overwhelming evidence already discussed, and taking into account Bilow's trial strategy of contesting his connection with the methamphetamine lab rather than the fact that it *was* a methamphetamine lab, we find it highly probable that the error did not contribute to the jury's verdict.

Bilow contends, nonetheless, that the weight of the methamphetamine given by Darley was unreliable because (1) it was allegedly weighed while still inside a tin box and (2) it was weighed on uncertified scales. These contentions, however, do not change the outcome here for two reasons. First, exhibits in the record indicated that there were at least four bags of methamphetamine found at the scene. Given the quantity of the drug, the jury was authorized to use its own knowledge and experience to determine that the large sample

---

[3] *Priebe v. State*, 250 Ga. App. 725, 726-727 (553 SE2d 5) (2001).
[4] *Atkinson v. State*, 243 Ga. App. 570, 572 (1) (531 SE2d 743) (2000).

weighed at least the 28 grams necessary for a trafficking conviction. See *Moon v. State*.[5] Second, contrary to Bilow's argument, the transcript does not clearly indicate that the methamphetamine was weighed while still inside the tin box. The transcript, which refers to "bag weight," is unclear as to whether the methamphetamine was weighed with the tin can or with the plastic bags only. This issue was not raised in the trial court. Therefore, the evidence in this case supported the verdict.

2. Bilow contends that the trial court erred by admitting similar transaction evidence that he had previously been arrested for manufacturing methamphetamine. However, Bilow has waived the issue by failing to object to this evidence at either the pre-trial hearing or at the trial. See Court of Appeals Rule 27 (a) (1). Bilow has therefore waived this ground. *Sapeu v. State*.[6] This contention is without merit in any event.

After a pre-trial hearing held pursuant to Uniform Superior Court Rule 31.3 (B) and *Williams v. State*,[7] the trial court admitted evidence of a separate incident in which Bilow was arrested for manufacturing methamphetamine. The court determined that this incident was factually similar to the charged crime and admitted the evidence to prove Bilow's course of conduct and knowledge of the process of manufacturing methamphetamine.

Bilow has not shown that the court abused its discretion in admitting the evidence. *Jones v. State*.[8] The evidence was introduced for an appropriate purpose, was satisfactorily linked to Bilow, and was sufficiently similar to the charged crime. *Dunbar v. State*.[9] Given its relevance and the court's appropriate limiting instruction contemporaneous with its admission and in its jury charge, the probative value of the evidence also outweighed its prejudice to Bilow. *Brundage v. State*.[10]

3. Bilow contends that he received ineffective assistance of counsel at trial. Bilow, however, has provided no citation to the record of incidents of ineffective counsel and has failed to argue or demonstrate that any of the alleged errors committed by his attorney harmed him. See Court of Appeals Rule 27.

---

[5] *Moon v. State*, 252 Ga. App. 796 (557 SE2d 442) (2001).

[6] *Sapeu v. State*, 222 Ga. App. 509, 510 (474 SE2d 703) (1996). While a defendant need not renew his objection when he files a motion in limine to exclude similar transaction evidence, here the pre-trial hearing arose from the *State's* motion to include the similar transaction evidence, not a motion by Bilow to exclude it. See *Chastain v. State*, 239 Ga. App. 602, 605 (521 SE2d 657) (1999).

[7] *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991).

[8] *Jones v. State*, 255 Ga. App. 609, 611 (565 SE2d 915) (2002).

[9] *Dunbar v. State*, 228 Ga. App. 104, 107-108 (2) (491 SE2d 166) (1997).

[10] *Brundage v. State*, 231 Ga. App. 478, 480 (499 SE2d 408) (1998).

A court's determination with respect to a claim of ineffective assistance of counsel will be affirmed unless clearly erroneous. *Chapman v. State.*[11] To prevail on such a claim, a defendant must show

> that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations omitted.) Id. at 349-350 (2). See *Strickland v. Washington.*[12]

The trial court determined that Bilow was not denied effective assistance of counsel. A general review of the record shows that the performance of Bilow's counsel, an experienced criminal defense attorney and former prosecutor of drug crimes, was not deficient. The trial transcript and counsel's post-trial testimony show that he was reasonably well prepared for the trial; he interviewed and contacted the appropriate witnesses, reviewed the State's file, and met with Bilow at length. The omissions complained of by Bilow were either the product of a reasonable trial strategy that attempted to establish Bilow's "mere presence," or they did not prejudice Bilow's case, or both. The trial court did not err in finding that Bilow's representation was not ineffective.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JUNE 18, 2003 —
RECONSIDERATION DENIED AUGUST 22, 2003 — 

*L. Elizabeth Lane*, for appellant.

*Howard Z. Simms, District Attorney, Wayne G. Tillis, Assistant District Attorney*, for appellee.

---

[11] *Chapman v. State*, 273 Ga. 348, 350 (541 SE2d 634) (2001).
[12] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).