## A03A0934. McDANIEL v. THE STATE.
(588 SE2d 812)

ADAMS, Judge.

Bobby Edward McDaniel appeals following his conviction on one count of possession of methylenedioxymethamphetamine with intent to distribute. McDaniel contends that the trial court erred in denying his motion to suppress and asserts further error arising from his trial. We affirm.

Officer Bryan Cavanaugh of the Tifton Police Department was the sole witness at the hearing on McDaniel's motion to suppress. Officer Cavanaugh testified that Alex Shuman, a 16-year-old informant, told him that drugs were being sold by someone named Ed, who worked at a flower shop and drove a white van. Shuman said Ed sold the drugs along with Jeremiah Price, who worked at Pizza Hut. Officer Cavanaugh determined that the white van was driven by McDaniel, who was the flower shop owner's son.

The police gave Shuman funds to attempt to purchase drugs from McDaniel, and he met with McDaniel at the flower shop. No drug transaction occurred at that time, but Shuman told police that he had arranged to meet McDaniel later to complete the transaction. That night, police conducted surveillance on McDaniel's home. The officers saw McDaniel leave the house in a red Jeep Cherokee. The police followed, but quit tailing McDaniel after they suspected that he had spotted them. The officers then went to the site where the drug transaction was to occur, but McDaniel never showed up.

A few days later, Shuman went to Pizza Hut with $100 in police funds to buy acid from Price, while the police kept surveillance. Shuman had previously described to police the procedure Price followed in selling drugs. The buyer would go to Pizza Hut and tell Price they wanted to buy some drugs. Price would take the buyer behind the Pizza Hut where money would be exchanged. Price would then drive home to get the drugs and return to Pizza Hut to hand them over to the buyer. On the night in question, police observed Shuman go into Pizza Hut and come out a few minutes later with Price. They saw Shuman give Price money and leave. Price returned to the restaurant.

Shuman then met with the police and told them that Price did not have any acid but had "ordered" four rolls of Ecstasy from a contact. Another man was supposed to bring the Ecstasy to Price, instead of Price going out to get it himself. Price told Shuman to return 45 minutes later. A few minutes later, officers observed McDaniel's red Jeep pull into the Pizza Hut. A passenger got out of the car, went inside, and came back out with Price. The officers watched the two men exchange money for an unidentified item.

After the passenger returned to McDaniel's Jeep, the officers

approached the car. As they approached, McDaniel locked the door. In response, Officer Cavanaugh drew his gun, pointed it at the ground, and ordered McDaniel to open the door. He pulled McDaniel out of the truck and patted him down. The officer discovered a plastic bag in his left pants pocket. In the bag were 29 white pills. A separate search of Price turned up four similar pills. Police also found four of the five $20 bills they had given Shuman on the floorboard of the car. Price later turned over the fifth $20 bill to police.

At trial, Price testified that McDaniel had previously told him that he had pills if anybody wanted to buy some. Price understood McDaniel to be talking about Ecstasy pills. When Shuman approached Price the next day at the Pizza Hut, Price took Shuman's money and called McDaniel on his cell phone. He told McDaniel that he needed four pills. Later than night, McDaniel arrived with James Darnell, who came into the restaurant to get Price. Price paid Darnell four $20 bills and received four pills in return, while McDaniel sat in his Jeep.

Darnell testified that when McDaniel picked him up that night, he told Darnell that they were going to Pizza Hut to sell some pills to Price. When they got to Pizza Hut, McDaniel handed Darnell the pills and told him to take them to Price. Darnell got Price and they came outside where Price gave Darnell $80 in exchange for the pills. When Darnell returned to the truck, he handed the money to McDaniel.

In addition, a forensic chemist at the Georgia Bureau of Investigation Crime Lab testified that the pills seized from McDaniel and Price tested positive for MDMA.

The evidence from the investigating officers at trial was consistent with Officer Cavanaugh's testimony from the suppression hearing, although none of the officers testified regarding the hearsay information provided by Shuman. In addition, Officer Cavanaugh testified that he found $570 and a cell phone, along with the 29 white pills, during his pat-down search of McDaniel. The officer opined that, based upon his training and experience, the possession of over 20 MDMA pills and over $500 in cash was consistent with somebody who was selling the drug.

1. McDaniel contends that the trial court erred in denying his motion to suppress the evidence seized on the night of his arrest. He asserts that the trial court erroneously relied upon hearsay testimony in denying the motion, and further asserts that Officer Cavanaugh's pat-down search was illegal because the officer lacked either probable cause to arrest him or a legal basis for an investigatory stop.

We will not disturb the trial court's order on a motion to suppress if there is any evidence to support it, and we construe all evi-

dence presented in favor of the trial court's findings and judgment. *Powers v. State*, 261 Ga. App. 296, 297 (582 SE2d 237) (2003). Where, as here, the evidence is uncontroverted and no question concerning the credibility of witnesses exists, our review of the trial court's application of law to the undisputed facts is de novo. *State v. Burnett*, 249 Ga. App. 334 (548 SE2d 443) (2001).

In this case, the police were required to have probable cause to believe that McDaniel had committed or was committing a felony in order to make a legal arrest:

> The legality of a warrantless arrest depends upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [a] suspect had committed or was committing an offense.

(Citations and punctuation omitted.) *McKenzie v. State*, 208 Ga. App. 683-684 (1) (431 SE2d 715) (1993). And officers may rely upon hearsay information in making the decision to arrest:

> It is well settled that an arrest may be made upon hearsay evidence; and indeed, the reasonable cause necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties. It is the function of the court to determine if the facts upon which the officer acted would warrant a man of reasonable caution to believe that an offense had been committed. Moreover, the reasonable cause necessary to support an arrest does not demand the same strictness of proof as proof of guilt upon the trial.

*Moore v. State*, 174 Ga. App. 826, 827 (1) (331 SE2d 115) (1985).

Thus, at a suppression hearing, unlike most trials, the conduct and motives of the officers are at issue,[1] and the court must look to the information available to the officer, including hearsay, to determine if probable cause existed. Accordingly, the trial judge may admit hearsay testimony at the hearing, giving it such weight and credit as he deems proper, although such evidence may not be admis-

---

[1] See generally *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) (when the conduct and motives of the actor are at issue, hearsay may be admitted to explain the actor's conduct).

sible at trial. *Jones v. State*, 131 Ga. App. 699, 700 (1) (206 SE2d 601) (1974).

But when probable cause is based, at least in part, upon information supplied by an informant, the state must demonstrate that the information is reliable. The information, however, "is not to be judged by any rigid test." (Citation omitted.) *Burnett*, 249 Ga. App. at 336-337 (2).

> Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citation omitted.) Id.

The informant in this case had no prior history of providing information to police, but we find that he proved his reliability by meeting with the police officers and "putting himself on the line by participating in the controlled purchase" of Ecstasy. See *McKenzie*, 208 Ga. App. at 684 (1). Moreover, the information he provided was corroborated by the officers' own observations. The police observed the exchange of money between Shuman and Price; the arrival of McDaniel and Darnell a short time later; the exchange between Darnell and Price; and Darnell's direct return to McDaniel's car.[2] Thus, the officers in this case did not improperly rely upon uncorroborated information from an unknown informant. Id. at 685 (1).

Under these circumstances, we find that probable cause existed for the officer to believe that McDaniel was a willing participant in the drug transaction, and his arrest was lawful. See *Gilbert v. State*, 212 Ga. App. 308, 309 (1) (441 SE2d 785) (1994); *McKenzie*, 208 Ga. App. at 684-685. It follows that the search of his person was incidental to his lawful arrest, and thus the trial court correctly denied McDaniel's motion to suppress. See *Gilbert*, 212 Ga. App. at 309 (1).

2. McDaniel next asserts that the trial court erred in allowing Officer Cavanaugh to opine at trial that the money and pills found in the pat-down search were evidence of his intent to distribute. "In our view, knowledge of the amount of [MDMA] one would generally possess for personal use or the amount which might evidence distribution is not necessarily within the scope of the ordinary layman's knowledge and experience." (Citation and punctuation omitted.) *Wise*

---

[2] Moreover, the fact that Shuman's earlier drug buy with McDaniel did not occur as planned did not demonstrate Shuman's unreliability. It was reasonable for police to assume that the deal had been aborted because McDaniel saw the police following him.

*v. State*, 257 Ga. App. 211, 214 (3) (570 SE2d 656) (2002). Accordingly, expert testimony was admissible on the issue. *Davis v. State*, 200 Ga. App. 44, 46 (2) (406 SE2d 555) (1991). And even if a police officer is not formally tendered as an expert, he may give opinion testimony if an adequate foundation is laid with respect to his experience and training. *Bilow v. State*, 262 Ga. App. 850, 851 (1) (586 SE2d 675) (2003). Thus, once a proper foundation is laid, an officer may testify about elements of a crime with which he is familiar based upon his experience, and this Court has previously allowed such testimony on the issue of drug commerce. *Kimbrough v. State*, 215 Ga. App. 303 (1) (450 SE2d 457) (1994).

Here, Officer Cavanaugh testified that he had been a policeman for seven years, approximately one and one-half years of which he served as an investigator. During that time, he had been involved in approximately 50 drug cases, 15 to 20 of which involved drug sales. The decision whether to qualify a witness as an expert lies within the sound discretion of the trial judge. *Kimbrough*, 215 Ga. App. at 303 (1). We find no abuse of discretion in the decision to admit Officer Cavanaugh's opinion testimony in this case.

3. McDaniel further contends that there was insufficient evidence to support his conviction. In particular, he notes that there was no testimony that the pills introduced into evidence contained methylenedioxymethamphetamine. Rather, the state's expert testified that the pills contained "MDMA." While the better practice would certainly have been for the state to elicit testimony from the expert that MDMA is the same thing as methylenedioxymethamphetamine, expert testimony is not always required to identify a substance, such as drugs. *Gooch v. State*, 249 Ga. App. 643, 645 (1) (549 SE2d 724) (2001). In any event, the drug was identified through chemical analysis as MDMA, and McDaniel does not dispute that MDMA is a shorthand reference for the longer chemical name of methylenedioxymethamphetamine. See *Bragg v. State*, 249 Ga. App. 430 (548 SE2d 121) (2001) (describing same crime as charged in this case as "possession of MDMA with intent to distribute"). We also note that at the time the pills were introduced into evidence, McDaniel did not object on the ground that they had not been properly identified as the same substance alleged in the indictment. Thus, we find no merit to McDaniel's argument that the state failed to prove he possessed methylenedioxymethamphetamine. See *Wiley v. State*, 238 Ga. App. 334, 336 (5) (519 SE2d 10) (1999); *Burroughs v. State*, 190 Ga. App. 467, 470 (1) (b) (379 SE2d 175) (1989).

And we find that when construed most favorably to the verdict, the evidence of record was sufficient to enable a rational trier of fact to find McDaniel guilty beyond a reasonable doubt of possession of

the drug with intent to distribute. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. McDaniel also takes issue with the trial court's decision to admit the pills into evidence because they were not identified as methylenedioxymethamphetamine. But as we have noted, McDaniel did not raise this objection at the time the evidence was proffered, and thus he waived that objection on appeal. *Craft v. State*, 254 Ga. App. 511, 524 (15) (563 SE2d 472) (2002). Having considered the remainder of McDaniel's arguments on the admissibility of the pills, we find that the trial court did not abuse its discretion in admitting this evidence. See *Cooper v. State*, 258 Ga. App. 825, 831 (5) (575 SE2d 691) (2002).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 15, 2003 —

*Kunes & Kunes, G. G. Joseph Kunes, Jr.*, for appellant.
*C. Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney*, for appellee.