A04A1199. POOLE v. THE STATE.
(606 SE2d 878)

MIKELL, Judge.

Robert Poole appeals from the trial court's order revoking his probation for committing armed robbery during his probation period and failing to pay court-ordered fines and restitution. Poole asserts that the trial court erred by: (1) failing to suppress a handwriting sample he gave to police; (2) failing to suppress evidence obtained in a photo lineup; (3) qualifying an expert in forensic document examination; and (4) concluding that a preponderance of the evidence showed that he had committed armed robbery. We granted Poole's application for discretionary review to consider Poole's first enumerated error, as stated above. However, upon further review, we conclude that the trial court did not err. The relevant facts follow.

The record shows that two men robbed the victim, who runs an alternative high school, while one of them pretended to enroll in the school. Before robbing the victim, one of the robbers wrote the name "Ted Gray" on a form. A detective learned that Poole told a friend, Riley, that he had robbed the victim at gunpoint while filling out paperwork at the school. Riley gave a written statement to this effect to the detective.

While at the police station on an unrelated matter, Poole learned that he was a suspect in the armed robbery. The police did not detain him or question him at that time. On a later day, the detective went to Poole's home and asked if he would volunteer to give a handwriting

---

[5] *Bowen v. State*, 237 Ga. App. 597 (516 SE2d 311) (1999).

sample to compare with an item from the crime scene. Poole agreed, got into the detective's car, and gave a handwriting sample at the police station. The detective testified that he did not force, threaten or coerce Poole into giving the sample. Poole was not under arrest and there was no warrant for his arrest at the time he gave the sample. After Poole gave the sample, the detective drove him home. In the motion to suppress hearing, Poole admitted that he was not forced to give the handwriting sample.

A witness qualified by the trial court as an expert in forensic document examination testified that she compared Poole's handwriting sample to the form signed by the robber and that, in her opinion, Poole signed the form provided by the victim.

At trial, Riley testified that Poole stated in his presence that he had robbed the victim. He further testified, however, that after meeting with defense counsel before trial, he believed that Poole was just making it up to impress him. Riley acknowledged that another witness threatened to turn him in to the police for another crime if he testified against Poole.

1. Poole argues that the trial court should have suppressed the handwriting sample he gave to police because he was in custody and had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and the Georgia Constitution.

(a) Poole asserts that under a "reasonable person" test, he was entitled to *Miranda* warnings.

> For *Miranda* to apply[,] a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. . . . To determine whether [a defendant's] statements were custodial, we apply an objective standard and determine whether a reasonable person in his situation would have believed he was physically deprived of his freedom of action in a significant way.

(Citations and punctuation omitted.) *State v. Brannan*, 222 Ga. App. 372, 374 (2) (474 SE2d 267) (1996). This objective analysis does not depend "upon the subjective views of either the person being interrogated or the interrogating officer." *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

> In determining whether *Miranda* warnings were required in a given situation, it is not relevant that the investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an

offense, so long as that individual is not in custody.

(Footnote omitted.) Id. "*Miranda* warnings are not required simply because questioning takes place in a building containing jail cells." (Citations omitted.) *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984).

We find that a reasonable person in Poole's situation would not "have believed he was physically deprived of his freedom of action in a significant way." (Citation omitted.) *Brannan*, supra. He voluntarily accompanied the police to the station, was not under arrest, was not forced or coerced to give the sample by his own admission, and was returned to his home after providing the sample. As a result, the trial court did not err by denying Poole's motion to suppress based on its conclusion that he was not in custody at the time he gave the handwriting sample. See *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1991) (defendant not in custody even though he was a suspect at the time he was invited to station to make a statement).

(b) We find no merit in Poole's argument that he was entitled to *Miranda* warnings based on a different standard than the one set forth above. Relying on *Escobedo v. Illinois*, 378 U. S. 478 (84 SC 1758, 12 LE2d 977) (1964), Poole asserts that warnings are required under an accusatory stage analysis that is triggered when the investigation begins to focus on a particular suspect.

In *Escobedo*, the Supreme Court held in full:

> We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody*, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused had been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," [cit.], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.

(Emphasis supplied.) Id. at 490-491. Examination of the Supreme Court's complete holding makes it clear that the fact that police focused on a particular suspect was not dispositive standing alone, and that police custody was another factor that the Supreme Court relied upon to find a violation of the defendant's constitutional rights.

Furthermore, in *Miranda*, the Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Id. at 444. To this statement the Court added a footnote: "This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused." Id. at n. 4. Thus, the analysis of whether *Miranda* warnings are required turns on the reasonable person test, not the "accusatory stage" analysis proposed by Poole.

(c) Poole contends that he was forced to incriminate himself in violation of the broader protection offered by the Georgia Constitution or OCGA § 24-9-20 (a), but we find no merit in this argument because he voluntarily provided the handwriting samples. *Thomas v. State*, 274 Ga. 156, 162 (7) (549 SE2d 359) (2001) ("While a defendant cannot be compelled to produce a handwriting exemplar, it is not error for the [s]tate to use as a handwriting exemplar a voluntary writing by the defendant.") (citation omitted); *Hambrick v. State*, 204 Ga. App. 668, 670 (3) (420 SE2d 308) (1992) (no violation of Georgia Constitution or OCGA § 24-9-20 (a) when defendant voluntarily provided handwriting sample during cross-examination).

2. Poole argues that the trial court should have suppressed evidence relating to a photo lineup because there was a substantial likelihood of misidentification. The record shows that the victim stated he could not positively identify anyone as the robber, but selected two photos showing men who looked like the man who had held the gun. One of the photos selected by the victim showed Poole.

We find no merit in this enumeration because the trial court, in effect, granted the motion to suppress at the conclusion of the revocation hearing when it found that the identification was unreliable and expressly stated that it would not consider the photo lineup identification as evidence against the defendant. Contrary to Poole's assertion, a reversal is not warranted simply because the judge heard the allegedly inadmissible evidence. "[W]hen the judge sits as the trier of fact, it is presumed that [he] will consider only legally admissible evidence." (Citation omitted.) *Schaffer v. City of Marietta*, 220 Ga. App. 382, 384 (2) (469 SE2d 479) (1996). Based on this

presumption, and the trial court's statement that it would not consider the identification, no harm could have resulted from the trial court's failure to suppress the evidence earlier in the proceeding.

3. Poole argues that the trial court should not have qualified as an expert a forensic document examiner employed by the Georgia Bureau of Investigation in its Forensic Sciences Division. "The qualification of an expert witness is within the sound discretion of the trial judge." (Citation omitted.) *Siharath v. State*, 246 Ga. App. 736, 738 (1) (541 SE2d 71) (2000).

> To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status.

(Citation omitted.) Id.

According to Poole, the witness was not qualified because she failed the test to become a member of the American Board of Forensic Document Examiners and was only a trainee member of the American Society of Forensic Document Examiners. Although this is true, the witness testified that she became a member of the Southeastern Association of Forensic Document Examiners after completing two years of training, that she had been performing handwriting analysis on a daily basis for the Georgia Crime Lab for the last eight years, that she had examined thousands of documents, and that she had been qualified as an expert witness in criminal cases tried in a Georgia superior court approximately eighteen times. Based on this evidence, we find no abuse of discretion by the trial court in qualifying the witness as an expert in forensic document examination. See *Siharath*, supra.

4. In his final enumeration of error, Poole contends insufficient evidence supports the trial court's conclusion that he committed armed robbery. A trial court may revoke a probated sentence when the preponderance of the evidence shows that the defendant has committed the alleged violation of his probation. OCGA § 42-8-34.1 (a). On appeal, "[t]his court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Punctuation and footnote omitted.) *Dugger v. State*, 260 Ga. App. 843 (581 SE2d 655) (2003). We find no abuse of discretion based on the facts presented here.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 15, 2004 —

*Jones, Cork & Miller, Christopher B. Jarrard*, for appellant.
*Howard Z. Simms, District Attorney, Sandra G. Matson, Dorothy V. Hull, Assistant District Attorneys*, for appellee.