A05A0978. MURRELL v. THE STATE.
(615 SE2d 780)

JOHNSON, Presiding Judge.

William Murrell was tried before a jury for the offenses of manufacturing methamphetamine and possession of methamphetamine. The trial court granted Murrell's motion for directed verdict on the charge of possession of methamphetamine because there was no evidence of methamphetamine in Murrell's possession, but denied his motion for directed verdict on the charge of manufacturing methamphetamine because the evidence showed that materials used to manufacture methamphetamine were present in Murrell's house. The jury found him guilty of the charge, and Murrell appeals, alleging the evidence was insufficient to support the jury's verdict, the trial court erred in denying his motion to suppress evidence seized from his residence, and the trial court erred in finding that Corporal Brock was qualified as an expert in the identification of methamphetamine and methamphetamine labs. We find no error and affirm Murrell's conviction.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that Corporal Brock of the St. Marys Police Department obtained information that Murrell

---

[1] See *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004).
[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).
[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

was manufacturing methamphetamine at his residence. Corporal Brock made arrangements with the public works director for the city of St. Marys to obtain Murrell's trash. In the trash, Corporal Brock found approximately 200 matchbooks with the part that ignites the matches removed, an empty gallon of camp fuel, rubber surgical gloves with red, chemical-looking burn stains on them, a few empty gas line antifreeze bottles, a section of grey-colored tubing that had duct tape applied to it, an empty gallon can of acetone, a large quantity of coffee filters that had red iodine-looking stains and white powdery-looking stains, and a shopping bag full of empty ephedrine cold tablet boxes and packaging. In addition, Corporal Brock noted a strong chemical smell coming from the trash bags. Based on these findings, Corporal Brock sought and obtained a search warrant for Murrell's residence.

The search revealed several glass jar containers with an off-white, off-brown-colored substance; some were oily and some chemical looking with a "residual effect appearance." Containers in the refrigerator held a white crystalline-looking substance, and several gallon jugs and drinking bottles contained what appeared to be chemicals. Officers also found an iodine bottle in the kitchen cabinet, a butane torch on top of the refrigerator, and a two-page document that appeared to be a recipe with various chemicals listed.

Corporal Brock testified as an expert in the identification of methamphetamine and methamphetamine labs. He used a demonstrative aid to explain to the jury the "red phosphorous" method for producing methamphetamine. He explained in detail how the various items found in Murrell's trash and residence are combined to produce methamphetamine, and he made it clear that ephedrine or pseudo-ephedrine-type cold tablets are the beginning source or precursor of methamphetamine. According to Corporal Brock, the source tablets are introduced into a solvent, such as antifreeze, and the solution is filtered several times through coffee filters, usually leaving a red or white crusty powdery stain on the filters. He further explained how acetone, lye, camp fuel oil, and the red phosphorous obtained from the strike plates of matchbooks are all used in the manufacturing process. An officer with the Camden County Sheriff's Office Drug Task Force testified during the trial that the items found in Murrell's trash were "consistent with the manufacture and production of methamphetamine."

Murrell contends the evidence was insufficient for a rational trier of fact to have found him guilty beyond a reasonable doubt of manufacturing methamphetamine because no methamphetamine was found in his house and all the necessary materials to manufacture methamphetamine were not found in his house. This claim lacks merit.

The term "manufacture" is defined, in relevant part, as

> the production, *preparation,* propagation, compounding, conversion, or *processing* of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. . . .[4]

OCGA § 16-13-21 (4) defines the phrase "controlled substance" to mean "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 and Schedules I through V of 21 C.F.R. Part 1308." OCGA § 16-13-26 places methamphetamine in Schedule II, and OCGA § 16-13-30.3 designates ephedrine and pseudoephedrine as sources, or precursors, of the finished methamphetamine product.

Neither this Court nor the Supreme Court of Georgia has directly addressed the definition of the term "manufacture" in the context of a case involving the charge of manufacturing methamphetamine. Likewise, neither court has ever addressed the issue of the minimum amount of evidence needed to support a conviction for manufacturing methamphetamine. However, contrary to Murrell's argument, we do not believe that a person needs to possess the final product, or all the components of the final product, in order to engage "indirectly" in the "production, preparation, propagation, compounding, conversion, or processing of a controlled substance."

Here, the evidence shows that Murrell possessed a combination of items and substances that are generally found together solely for the purpose of manufacturing methamphetamine. We conclude that when a defendant possesses most of the objects and substances needed to "prepare" or "process" methamphetamine by the red phosphorous technique, a rational trier of fact, applying OCGA § 16-13-21 (15)'s broad definition of manufacture, could find beyond a reasonable doubt that the defendant was "preparing" or "processing" that drug. Contrary to Murrell's argument, the evidence was sufficient to support reasonable inferences of "preparation" and "processing," and thus of manufacturing, even though the evidence does not show that he had the completed drug or all of the items needed to manufacture the completed drug. Murrell's conviction for manufacturing methamphetamine is affirmed.

2. Murrell contends the trial court erred by denying his motion to suppress evidence seized from his residence as a result of the search

---

[4] (Emphasis supplied.) OCGA § 16-13-21 (15).

warrant. He specifically argues that the affidavit for the search warrant failed to establish probable cause for the issuance of the warrant. We disagree.

In determining probable cause for a search warrant,

> the magistrate is merely to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[5]

This Court must give substantial deference to the magistrate's decision to issue a search warrant after finding probable cause, and the magistrate's factual findings regarding probable cause will be upheld unless clearly erroneous.[6] The resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants.[7] A "totality of the circumstances" test is employed to determine whether probable cause supported issuance of a search warrant.[8]

Contrary to Murrell's arguments, the magistrate was not required to rule out all possible doubt regarding the allegations in the affidavit. Rather, the magistrate was under a duty to look at the entire affidavit and determine if, taking a common sense approach, the information presented showed a reasonable probability that contraband would be found in the place to be searched.[9] Here, the affidavit contained sufficient information to justify this conclusion.

According to the affidavit: (1) a source told the officer that Murrell was manufacturing methamphetamine in his residence, (2) the source gave the officer Murrell's name and the address where he resided, (3) the source told the officer that Murrell had left the state of Missouri after getting out of prison for manufacturing methamphetamine, (4) the source stated that he was present when another individual purchased acetone and cold medicine for Murrell, and (5) the source stated that he personally knew at least one individual who purchased methamphetamine from Murrell. The officer verified the source's information by observing a vehicle at the given residence and running the vehicle's registration, which showed that the vehicle was

---

[5] (Citations omitted.) *Gordon v. State*, 248 Ga. App. 776, 777 (546 SE2d 925) (2001).

[6] Id. at 777-778; see also *Perkins v. State*, 197 Ga. App. 577, 578-579 (1) (398 SE2d 702) (1990).

[7] See *Claire v. State*, 247 Ga. App. 648, 649 (544 SE2d 537) (2001).

[8] See *Sims v. State*, 207 Ga. App. 353, 354 (427 SE2d 842) (1993).

[9] See *McCollum v. State*, 258 Ga. App. 574, 576 (1) (574 SE2d 561) (2002).

owned by Murrell. The officer also obtained a criminal history on Murrell, which showed convictions for manufacturing methamphetamine. And the officer contacted Murrell's probation officer in Missouri and confirmed that Murrell had been imprisoned for manufacturing methamphetamine. The affidavit further listed a number of items recovered from a trash pull at Murrell's residence, and the officer averred that these items were known to be used in the manufacture of methamphetamine. According to the officer, a strong odor of chemicals could be smelled as he inventoried the trash bags.

Based on the totality of the circumstances, the affidavit in this case contained enough information to give the magistrate a substantial basis for concluding that probable cause existed to issue the search warrant. The trial court did not err in denying Murrell's motion to suppress.

3. Murrell next argues that the trial court erred by finding that Corporal Brock was qualified to testify as an expert in the identification of methamphetamine and methamphetamine labs. "An expert is one whose habits and profession endow him or her with a particular skill in forming an opinion on the subject matter in inquiry."[10] The qualification of a witness as an expert is addressed to the sound discretion of the trial court.[11]

> To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status.[12]

We review the trial court's decision under an abuse of discretion standard.[13]

Here, questioning revealed that Corporal Brock had completed several courses on the identification of methamphetamine labs and the process for manufacturing methamphetamine. Corporal Brock testified that he had been employed with the St. Marys Police Department for four years and had dealt with narcotics cases since 2002. He testified that he had specialized training specifically dealing with the identification of methamphetamine and methamphetamine labs. Corporal Brock noted that he "had a four-hour lab safety course dealing with clandestine laboratories, i.e. methamphetamine,

---

[10] (Citation omitted.) *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993).
[11] *Keri v. State*, 179 Ga. App. 664, 667 (1) (347 SE2d 236) (1986).
[12] *Poole v. State*, 270 Ga. App. 432, 436 (3) (606 SE2d 878) (2004).
[13] See *Smith v. State*, supra.

mainly clandestine laboratories or methamphetamine-based laboratories." This course specifically dealt with the chemicals used to manufacture methamphetamine. He testified that he had more than 100 hours of specialized training dealing with narcotics investigation from both state and federal training programs, with 30-40 hours of that training focused on the investigation of clandestine labs. Based on Corporal Brock's training and experience, we find no abuse of discretion by the trial court in qualifying the witness as an expert in the identification of methamphetamine and methamphetamine labs.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 6, 2005 —
RECONSIDERATION DENIED JUNE 17, 2005 — 

*Robert L. Crowe*, for appellant.

*Stephen D. Kelley, District Attorney, William S. Hart, Assistant District Attorney*, for appellee.