A08A1300. BOONE v. THE STATE.
(667 SE2d 880)

MILLER, Judge.

A jury convicted David Wayne Boone of six counts in violation of the Georgia Controlled Substances Act: trafficking in methamphetamine, OCGA § 16-13-31 (e) (Count 1); manufacture, distribution, and possession of methamphetamine with the intent to distribute, OCGA § 16-13-30 (b) (Counts 2-4, respectively); possession of ephedrine/pseudoephedrine, OCGA § 16-13-30.3 (b) (1) (Count 5); and possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b) (4), (5) (Count 6). The trial court entered its judgment of conviction upon the jury's verdict as to Counts 2-6 finding that Count 1 merged into Count 2 as alleging the same offense. Boone appeals from the denial of his amended motion for new trial, challenging the sufficiency of the evidence upon the general grounds, the admissibility of evidence seized in the police search of his premises, the admissibility of his custodial and noncustodial statements, and the trial court's ruling denying his *Batson*[1] motion. Boone also contends that the trial court erred in violating the rule of sequestration; in allowing into evidence the out-of-court statement of a State's witness; in allowing the State's lead investigator to testify as an expert and restricting his cross-examination of the same; and in allowing the State's forensic chemist to testify as to the nature of a substance based on another's analytical findings. Further, Boone maintains that the trial court erred in allowing one or more jurors to begin deliberating before the close of the case, in allowing certain testimony as to the hazardous nature of a meth lab and in allowing the prosecutor to make an improper comment on his character during closing argument. Discerning no error, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, without affording the defendant the presumption of innocence. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). So viewed, the evidence shows that

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

on December 19, 2003, while on routine patrol in Jackson County, Deputy Sheriff Charlie Timms noticed a Chevrolet truck driven by Leila Hilyer make a sharp left turn without using its turn signals. Deputy Timms pursued, and stopped the vehicle in front of a trailer home owned by the Boones. Hilyer and her passenger exited the vehicle, Hilyer then going to speak with Deputy Timms and the passenger walking quickly to the residence and entering without knocking. Upon being questioned, Hilyer told Deputy Timms that her driver's license had been suspended. Shortly thereafter, Boone's co-defendant Derwin Phillips, emerged from the residence and approached Hilyer and Deputy Timms. A records check revealed that Phillips' driver's license had also been suspended and warrants were outstanding as to Hilyer and Phillips. After the arrival of Captain Rich Lott and Investigator Jim Askey at the scene, Hilyer and Phillips were arrested.

During searches conducted incident to the arrests, Deputy Timms recovered a baggie containing what he believed to be methamphetamine under the passenger seat of the truck. Investigator Askey then knocked on the door of the Boones' residence. In response to Investigator Askey's request, Boone and his wife, Alethia, gave oral and written consent to a search of the residence and its curtilage.

Upon entering the trailer, the officers observed digital scales in plain view on the kitchen countertop. In the Boones' bedroom closet, Investigator Askey found approximately a dozen Mason jars, funnels, wooden spoons, and other utensils used in manufacturing methamphetamine. In a bureau next to the closet, Investigator Askey also found what appeared to be a 40-watt light bulb that had been altered to permit smoking methamphetamine. A total of 459 pills, containing ephedrine or pseudoephedrine, were recovered from multiple locations throughout the home.

Outside, the officers found an empty can of engine starter fluid. The can had been altered in a manner consistent with removing ether from the fluid, for use in making methamphetamine. The officers also found an electrical cord outside the trailer leading to a panel van on the property. When the officers entered the van, they found a sawed-off 12-gauge shotgun, with Boone's name, multiple swastikas, an Iron Cross, and the Confederate flag, carved into the stock. The names "Wayne" and "Alethia" were scrawled on one interior panel of the vehicle. Deputy Timms found a 50-gallon burn barrel, Coleman fuel bottles, chemicals, and propane tanks in the area beyond the trailer.

Investigator Askey testified that all items necessary for manufacturing methamphetamine had been found in and around the van, i.e., that the van housed a "meth lab." According to Askey, Boone

explained that these items belonged to the person to whom he had rented the van. Boone's arrest and that of his house guest, David Gunter, followed. In related testimony, Georgia Bureau of Investigation ("GBI") forensic chemist, Deneen Kilcrease, testified that methamphetamine was being manufactured at that location, based on her observations of the physical evidence at the scene and the analytical findings of another forensic chemist. Mark Lavender, a GBI agent certified as a methamphetamine laboratory technician and site safety officer, testified that the number of Sudafed pills found at the residence alone could produce between 30 and 33 grams of methamphetamine and that he had observed methamphetamine suspended in a liquid jar inside the van. Agent Lavender also stated that when he interviewed Gunter after his arrest, Gunter told him that Boone had provided him methamphetamine earlier in the evening at Boone's trailer. According to Gunter, Boone indicated that he had plenty of it and that Gunter could have all he wanted.

1. Asserting the general grounds, Boone claims that his convictions must be reversed because the circumstantial evidence was insufficient to establish his guilt beyond a reasonable doubt. We disagree.

"When the general grounds are asserted, as here, only the sufficiency of the evidence can be considered. [Cit.]" *Knox v. State*, 254 Ga. App. 870, 871 (564 SE2d 225) (2002). In that regard,

> [w]e view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or assess witness credibility, but merely determine whether the evidence is sufficient to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Davis v. State*, 272 Ga. App. 33 (611 SE2d 710) (2005).

Here, there was evidence that the panel van at issue belonged to Boone, had been modified as a meth lab, was located on Boone's property, and was powered by an electrical cord which ran to the van from his trailer; everything necessary to support the production of methamphetamine was present in the vicinity of the vehicle; Boone's name and that of his wife had been scrawled on an interior panel of the vehicle; Boone offered to provide any additional methamphetamine that Gunter wanted; and uncured methamphetamine and enough ephedrine was present at the scene to make 30 to 33 grams of methamphetamine. Further, by his custodial statement, Boone admitted that he had given methamphetamine to others and that he owned the sawed-off shotgun recovered from the panel van.

Notwithstanding the foregoing, Boone argues that his convictions are supported by insufficient circumstantial evidence given the fact that co-defendant Phillips had the key to his van. "To warrant a conviction on circumstantial evidence, [however,] the proved facts need exclude only *reasonable* hypotheses — not bare possibilities that the crime could have been committed by someone else. And questions of reasonableness are generally decided by the jury." (Citation and punctuation omitted; emphasis in original.) *Daugherty v. State*, 283 Ga. App. 664, 667 (1) (a) (642 SE2d 345) (2007). Apart from admitting that he distributed methamphetamine and owned the firearm taken from the van (Counts 3 and 6), Boone proffers no more than bare possibility in opposition to the foregoing circumstantial evidence of his participation in the remaining crimes of which he was convicted, i.e., the manufacture and possession of methamphetamine with the intent to distribute (Counts 2 and 4), and the possession of ephedrine (Count 5). It follows that a rational trier of fact could have found Boone guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Boone argues that he withdrew his consent to search his residence, and, as a consequence, that the trial court erred in denying his motion to suppress the evidence seized during that search. In support of this argument, Boone cites to the testimony of Investigator Askey. Askey, however, testified only that Boone "got kind of upset a little bit . . ." upon being questioned regarding the things which had been found at his trailer. "[A]ny action which purports to be a withdrawal of consent must be recognizable as such based upon an objective standard of reasonableness." (Citation omitted.) *Whiting v. State*, 275 Ga. App. 251, 253-254 (620 SE2d 480) (2005). We fail to see how this testimony demonstrates that Boone withdrew his consent.

3. Boone contends that the trial court erred in admitting his custodial and noncustodial statements, claiming that both were involuntary. We disagree.

"The standard for determining whether or not a confession was voluntary is the preponderance of the evidence standard. The trial court's decision on this point will not be disturbed on appeal unless there is obvious error." (Footnote omitted.) *High v. State*, 271 Ga. App. 388, 390 (2) (609 SE2d 722) (2005).

(a) Read together, OCGA §§ 24-3-50 and 24-3-51 make a confession inadmissible if made with the hope of "direct" benefit; however, hope of a "collateral" benefit does not render a confession inadmissible. "The phrase 'hope of benefit' generally means the reward of a lighter sentence." (Footnote omitted.) *State v. Johnson*, 273 Ga. App. 324, 325 (615 SE2d 163) (2005). A promise not involving the

sentence or charge at issue is one promising a collateral benefit, and such a promise does not make an otherwise admissible statement inadmissible. *Pasuer v. State*, 271 Ga. App. 259, 261-262 (1) (609 SE2d 193) (2005).

The record shows that after he was arrested and transported to the Jackson County jail, Boone asked to speak to the police. Pursuant to this request, Investigator Askey interviewed Boone on December 23, 2003. During that interview Boone asked Askey for assistance in having a warrant against him dismissed, and Investigator Askey replied that he would talk to the district attorney's office about doing so at a later time. This response was no more than a promise of a collateral benefit, and accordingly did not render Boone's custodial statement inadmissible. See *Evans v. State*, 248 Ga. App. 99 (545 SE2d 641) (2001) (a promise to talk to the prosecutor is one promising a collateral benefit not rendering statement inadmissible); see also *High*, supra, 271 Ga. App. at 390-391 (2) ("[T]elling a defendant that his or her cooperation will be made known to the prosecution[, however,] does not constitute the 'hope of benefit' sufficient to render a statement inadmissible under OCGA § 24-3-50.") (punctuation and footnote omitted).

(b) Boone also claims that his noncustodial statement was involuntary because he was not given the required *Miranda*[2] warnings. Such claim is likewise without merit.

Boone made the complained-of statement after Investigator Askey observed the physical evidence in Boone's house and yard, and said to Boone on the porch of his residence, "Hey, you need to kind of shoot straight with me here. You've got enough stuff here to cook crank. What's going on?" Boone replied that he was renting the van to another person. His arrest followed later that day.

> *Miranda* protections adhere when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required.

(Citations and punctuation omitted.) *Heckman v. State*, 276 Ga. 141, 143 (1) (576 SE2d 834) (2003). Inasmuch as the statement at issue came before Boone's arrest and absent circumstances amounting to the same, the trial court did not err in admitting Boone's noncustodial statement.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

4. Boone contends that the trial court erred in overruling his *Batson* challenge to the State's peremptory strike of an African-American juror. Inasmuch as Boone failed to meet his burden to show that the juror's excusal was for a racially discriminatory purpose, no *Batson* error resulted.

> The United States Supreme Court in *Purkett v. Elem*[, 514 U. S. 765, 767-769 (115 SC 1769, 131 LE2d 834) (1995),] established a three-step test for evaluating challenges to peremptory strikes on *Batson* grounds. First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving discriminatory intent in fact motivated the strike.

(Footnote omitted.) *Freeman v. State*, 253 Ga. App. 401, 402 (1) (559 SE2d 146) (2002).

Here, assuming arguendo that he established a prima facie showing of racial discrimination, Boone was unable to rebut the State's explanation of the race-neutral reasons for its strike. Specifically, the State explained that it struck the juror at issue because he had a prison ministry, had been a character witness in a criminal case, and was related to another juror the State struck because he was previously charged with aggravated assault. "Unless a discriminatory intent is inherent in [a] proponent's explanation, the reason offered will be deemed race neutral." (Punctuation and footnote omitted.) *O'Hannon v. State*, 240 Ga. App. 706, 707 (1) (524 SE2d 759) (1999). The State's explanation of the strike at issue reveals no such intent. Accordingly, the trial court did not abuse its discretion in denying the instant *Batson* motion. See *Roberts v. State*, 282 Ga. 548, 550 (5) (651 SE2d 689) (2007).

5. Further, Boone asserts that the trial court erred in denying his motions for a mistrial, arguing (i) that the prosecutor "read, stated the contents of and alluded to" a prior inconsistent statement made by State's witness Donald Gunter; and (ii) that the trial court's admission into evidence of Gunter's statement was error because Agent Lavender testified as to the contents thereof after Gunter left the courtroom. By a related claim of error, Boone argues that the trial court erred in admitting Investigator Askey's testimony regarding the contents of Gunter's statement as based on the transcript of the statement which was not in evidence and which was made upon

a recording, portions of which were inaudible. We disagree.

(a) Following his arrest at Boone's residence on the day of the incident, State's witness Gunter gave a statement to police in which he admitted, among other things, that he had been smoking methamphetamine which Boone had given him and that Boone had destroyed methamphetamine in the residence as the police arrived. Given testimonial immunity at trial, however, Gunter testified at trial that he could not recall the contents of his statement to police. The prosecutor, therefore, referred to the transcript made of Gunter's prior statement and asked Gunter to "glance at the statement to refresh [his] memory" and admonished him not to read aloud from it. This the prosecutor was authorized to do in light of OCGA § 24-9-69 which provides: "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." OCGA § 24-9-69. Nothing of record bears out Boone's claim that the prosecutor read or referred to the contents of Gunter's statement. Consequently, the trial court did not err in denying Boone's motion for a new trial on this basis.

(b) Boone's claim that the trial court erred in allowing Agent Lavender's testimony as to the contents of Gunter's out-of-court statement likewise is without merit.

Here, the record shows that Gunter testified, on direct examination, that he did not know whether any methamphetamine had been destroyed before the police entered the residence. However, Agent Lavender, who was present when Investigator Askey interviewed Gunter, testified that Gunter then stated the contrary, indicating that Boone had flushed methamphetamine down a toilet at the back of the residence as the police arrived. The "prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). This is such a case.

(c) The record shows, and Boone concedes by his brief on appeal, that Investigator Askey testified from memory as to what Gunter told him at the time he interviewed him. Therefore, pretermitting whether the transcript at issue was in any sense unreliable as based upon inaudible portions of the recording made of the interview, such testimony was admissible. OCGA § 24-9-69; *Gibbons*, supra, 248 Ga. at 862.

6. Boone contends that the trial court erred in allowing Investigator Askey to testify as an expert regarding the street level narcotics trade, the characteristics of a methamphetamine lab, and the status of a baggie as containing a crystalline substance consistent

with methamphetamine. "An expert is one whose habits and profession endow him or her with a particular skill in forming an opinion on the subject matter in inquiry. The qualification of a witness as an expert is addressed to the sound discretion of the trial court." (Punctuation and footnotes omitted.) *Murrell v. State*, 273 Ga. App. 735, 739 (3) (615 SE2d 780) (2005).

Generally, an individual will qualify as an expert upon a showing of being "knowledgeable in a particular matter; [such] special knowledge may be derived from experience as well as study[;] and formal education in the subject is not a requisite for expert status." (Citation omitted.) *Poole v. State*, 270 Ga. App. 432, 436 (3) (606 SE2d 878) (2004).

Investigator Askey testified, in relevant part, that he had been employed in law enforcement since 1988; that, in addition to his formal training as a police officer, he had received 240 hours of narcotics training; that he had attended a regional drug training academy specializing in the recognition of clandestine methamphetamine labs; that he had attended informant management classes, undercover drug classes and drug identification classes; that he had previously investigated cases involving possession of narcotics with the intent to distribute and manufacturing of the same, including methamphetamine; and, among other things, that he used confidential informants to assess new trends in the world of illegal narcotics. Based on his training and experience, we find no abuse of discretion by the trial court in qualifying Investigator Askey as an expert in the street level narcotics trade, the characteristics of a methamphetamine lab, and the identification of a substance as possible methamphetamine. *Poole*, supra, 270 Ga. App. at 436 (3); see also *Bilow v. State*, 262 Ga. App. 850, 851 (1) (586 SE2d 675) (2003) ("It is well established that expert testimony is not necessary to identify a substance, including drugs. And even if police officers are not formally tendered as expert witnesses, if an adequate foundation is laid with respect to their experience and training, their testimony regarding narcotics is properly admitted.") (citation, punctuation and footnote omitted.)

7. The trial court did not abuse its discretion by refusing to allow any cross-examination of Investigator Askey as to that part of Boone's custodial statement in which he identified co-defendant Phillips as the individual to whom he rented the panel van used as a meth lab. Inasmuch as Boone did not testify, the admission of his custodial statement implicating Phillips was barred by *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Under

*Bruton,*

> a defendant's constitutional right of confrontation is violated when: (a) co-defendants are tried jointly; (b) one co-defendant's statement is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.

(Citations omitted.) *Hankerson v. State*, 275 Ga. App. 545, 547 (621 SE2d 772) (2005).

8. Neither did the trial court err in allowing the testimony of State's expert, forensic chemist Kilcrease. The record shows that one substance removed from the scene for chemical analysis was tested by her GBI colleague, forensic chemist Amy Parish. At trial, Kilcrease, who had been present at the scene, testified that the substance tested positive for methamphetamine based on Parish's analytical findings.

> Where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based in part on the other's findings. . . . Where, as here, the expert is available for full and searching cross-examination, the failure of the expert to test independently the control sample, after observing its analytical test results, goes only to the weight of the evidence and not to its admissibility.

(Citations and punctuation omitted.) *Robinson v. State*, 231 Ga. App. 368, 370 (3) (498 SE2d 579) (1998).

9. Further, Boone contends that the trial court erred in denying his motion for a mistrial, based upon the allegation that "one or more jurors" had begun deliberating before the close of the evidence. Boone bases this claim of juror misconduct on the fact that during an out-of-court hearing, the trial court received two questions from the jury before it received the case — one asking the difference between trafficking and distribution and the other seeking the definition of possession of a firearm during the commission of a crime.

When irregular juror conduct is established, a presumption of prejudice to the defendant results, requiring the prosecution to show, beyond a reasonable doubt, that no harm occurred. *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996). "[A] jury verdict[, however,] will not be upset solely because of [juror misconduct], unless '[such conduct is] so prejudicial that the verdict must be deemed inherently lacking in due process.' " (Citation and punctuation omitted.) Id.

While the record shows that at least one juror had begun thinking about the case, there is no evidence that any deliberation of the case had begun. Moreover, when the jury reentered the courtroom, the trial court gave a curative instruction as follows:

Let me instruct all the jurors that at the end of the trial I will explain the law to you in more detail and will explain the differences, if any, between the various offenses. And, unfortunately, at this time you'll need to listen to the facts. You'll be given the law at the end of the trial, and that's when you'll have to apply the facts to the law.

Given the foregoing, we find no inherent prejudice inuring to Boone's detriment. The instant claim of error is therefore without merit.

10. Boone contends that the trial court erred in failing to sustain his objection to the closing argument of the prosecutor insofar as it attributed the swastikas carved into the stock of Boone's shotgun as tantamount to a statement of "political affiliation." Without requesting any remedy, defense counsel objected that this argument was unsupported by the evidence, and the trial court then instructed the prosecutor to confine her remarks to the evidence. Boone made no further objection, foreclosing reversible error. *Banks v. State*, 281 Ga. 678, 682 (4) (642 SE2d 679) (2007).

11. Boone failed to support his remaining claims of error by any reference to the record. We therefore deem them abandoned. Court of Appeals Rule 25 (c) (2) (i).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 23, 2008.

*N. David Wages*, for appellant.
*Richard K. Bridgeman, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.