[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11538
_____

D.C. Docket No. 2:15-cv-00099-LGW-RSB

CHRISTINA BRINSON,
and all other persons similarly situated,

Plaintiff - Appellant,

versus

PROVIDENCE COMMUNITY CORRECTIONS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 9, 2017)

Before TJOFLAT, ROSENBAUM and SENTELLE,* Circuit Judges.

PER CURIAM:

_____

* Honorable David Bryan Sentelle, United States Circuit Judge for the District of
Columbia, sitting by designation.

Plaintiff-Appellant Christina Brinson pled guilty in Georgia's Wayne County State Court to several misdemeanor offenses. The court imposed fines on Brinson and sentenced her to four one-year terms of confinement, but the court allowed her to serve the sentences on probation. Under Georgia law, counties can take the more traditional route of establishing and operating their own probation systems, *see* O.C.G.A. § 42-8-101(a)(2), but they can also contract with private companies for the private provision of probation services, *see id.* § 42-8-101(a)(1). The Wayne County State Court, along with Wayne County itself, contracted with Defendant-Appellee Providence Community Corrections ("Providence") for the private provision of probation services. So the court in Brinson's case referred Brinson to Providence for probation.

The so-called "Services Agreement" among Providence, Wayne County, and the Wayne County State Court created what it deemed a "user-based fee program." Under this program, Providence generated income by requiring probationers to pay Providence costs and fees associated with the various services the probationers received as part of their probation. Wayne County and the Wayne County State Court paid nothing to Providence; the court's obligation was simply to enforce probationers' duty to pay for services received.

Brinson filed suit in federal court, attacking Georgia's private-probation system and seeking relief on behalf of a class of individuals who have paid

2

probation-related fees to Providence in Georgia. In Count I of her complaint, she seeks an order declaring the statute authorizing Georgia's private-probation system, O.C.G.A. § 42-8-101(a)(1),[1] unconstitutional on a number of grounds under the U.S. and Georgia Constitutions.[2] Count I also seeks a declaration that the Services Agreement is void for not having been properly approved or re-approved by Wayne County and the Wayne County State Court. In Count II,

---

[1] Until July 1, 2015, this provision was codified at O.C.G.A. § 42-8-100(g) and was substantially the same. *See* 2015 Ga. Session Laws, Act 73 (H.B. 310) § 3-2. Brinson's complaint refers to the prior codified version of the provision rather than the current version.

[2] The main argument upon which Brinson relies in her briefing is that the "probationer pays" probation system administered by Providence creates an impermissible conflict of interest on Providence's part. According to Brinson, the "probationer pays" financial framework gives Providence the incentive to charge as many fees per probationer as it possibly can, but in Brinson's view, a probation officer has a duty to act in his or her probationers' best interests, which allegedly do not encompass paying unnecessary fees. *See Gagnon v. Scarpelli*, 411 U.S. 778, 783-84 (1973) ("While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional attitude. The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety." (internal quotation marks and citation omitted)). Brinson claims that this conflict of interest violated her right to procedural due process under the Fourteenth Amendment to the U.S. Constitution. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) (examining alleged conflict of interest of executive-branch officer in administrative proceedings). While we have serious doubts about whether Brinson's complaint (as opposed to her briefing) sets forth the allegations needed to establish this claim, we do not resolve that issue today.

As for Brinson's separate argument that her rights were violated when the Wayne County State Court revoked her probation and imprisoned her after she failed to pay the fees she owed Providence, we read Brinson's complaint as asserting this claim under the Georgia Constitution's prohibition of "imprisonment for debt" and not, as our dissenting colleague reads it, under the U.S. Constitution. We do not ignore this claim, as the dissent suggests. Rather, to the extent the claim seeks a declaratory judgment, we doubt our jurisdiction over the claim for the reasons applicable to all other claims seeking a declaratory judgment. And to the extent the claim seeks damages, we doubt our jurisdiction over the claim for the reasons applicable to all other claims seeking damages.

Brinson seeks damages under the Georgia-law theory of "money had and received" based on the fees she paid pursuant to the allegedly void Services Agreement.[3]

Providence responded to the complaint with a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. First, Providence argued that the court lacked jurisdiction over the complaint because Brinson failed to establish her standing to bring suit. But Providence also asserted a number of reasons why it believed Brinson failed to state a claim. The district court granted Providence's motion to dismiss, finding that, although Brinson adequately alleged her standing, each of the claims she asserted failed to state a claim. At no point did Brinson ask the court for leave to amend her complaint.

Brinson now appeals, asking that we reverse the district court's dismissal of her case with prejudice and remand the case for further proceedings. We cannot, however, address the merits of this dispute because we have the affirmative obligation to inquire into subject-matter jurisdiction whenever its existence is doubtful, *see Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005), and we have serious doubts about whether subject-matter jurisdiction exists over this case.

---

[3] We construe Brinson's request for damages as arising solely under Count II, which seeks damages on the Georgia-law theory of money had and received. Unlike the dissent, we do not construe the prayer for relief's request for "such other and further relief as is just and equitable" as a separate request for damages under Count I because (1) Count I is plainly labeled "Cause of Action for a Declaratory Judgment" and (2) Count II already seeks damages based on the violations asserted in Count I.

4

Brinson's complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and damages based on the Georgia-law theory of money had and received. And Brinson chose to seek these remedies in federal instead of state court. The federal courts are courts of limited jurisdiction, *see United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005), and our subject-matter jurisdiction over Brinson's claim for declaratory relief has been called into question by Providence's assertions on appeal that (1) the Services Agreement has "been terminated effective April 2015" and (2) Providence "no longer provides private probation services in Wayne County."

"Declaratory relief is by its nature prospective," and "[f]or a plaintiff seeking prospective relief to have standing, he must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *McGee v. Solicitor Gen. of Richmond Cty., Ga.*, 727 F.3d 1322, 1325 (11th Cir. 2013) (internal quotation marks and citations omitted); *see also Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (explaining that a federal court lacks subject-matter jurisdiction over a plaintiff's claim if the plaintiff lacks standing). It seems likely that, if the Services Agreement was terminated effective April 2015, then, at the time Brinson filed her complaint in July 2015, she was no longer subject to the "probationer pays" cost structure of the Services Agreement and was therefore unlikely to suffer any future injury from that agreement. Without a threat of future

5

injury at the time she filed her complaint, she would not have had standing to seek declaratory relief.

Providence also tells us that it no longer provides probation services in Wayne County. It therefore seems likely that Brinson is no longer serving probation under Providence's purview. If she was no longer serving probation under Providence at the time she filed her complaint, then for this reason as well, she would not have had standing to seek a declaratory judgment at the time she filed her complaint.

And even if we were inclined to reverse the district court's order of dismissal and allow at least one of Brinson's declaratory-relief claims to proceed to discovery, it seems likely that any such claim has been mooted by the fact that Brinson is no longer serving probation under Providence. *See McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's claim for declaratory relief against a county prison was mooted by the prisoner's transfer to a state prison); *see also Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (explaining that, if a claim is moot, a federal court no longer has subject-matter jurisdiction over it). Indeed, it may be that, at this point, Brinson is no longer serving probation at all, nor is she still imprisoned, which might also moot her request for a declaratory judgment.

Brinson does, of course, also seek retrospective relief in the form of damages, but even if she had standing to pursue that relief (an issue we do not decide), the existence of subject-matter jurisdiction over that claim is dubious for other reasons.[4]

In her complaint, Brinson invokes 28 U.S.C. §§ 1331 and 1332 as her bases for subject-matter jurisdiction.  Her damages claim is based not on 42 U.S.C. § 1983, but rather on a Georgia cause of action (the claim of money had and received).  So for federal-question jurisdiction to exist, Brinson would have to establish that her state-law cause of action arises under federal law by satisfying the four-part test laid out in *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.").  The parties have not briefed this issue, and it does not bode well for Brinson that only a "special and small category of cases" satisfies the *Gunn* test. *Id.* at 1064 (internal quotation marks and citation omitted).

The question then becomes whether, in the alternative, diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1).  Brinson alleges that Providence's principal

---

[4] Contrary to our dissenting colleague's contention, we do not "fail to acknowledge" Brinson's request for damages.  For the reasons that follow, we explain that, even if Brinson's request for damages is justiciable insofar as standing and mootness are concerned, we have serious doubts as to whether subject-matter jurisdiction under 28 U.S.C. § 1331 or 1332 exists over her request for damages.

place of business is in Georgia. While Brinson does not expressly allege her state of citizenship, it seems likely, based on a reading of the complaint as a whole, that if she were to amend her complaint, she would allege her citizenship to be in Georgia. If so, a lack of complete diversity would exist, and jurisdiction could not be invoked under § 1332(a)(1).

Brinson does purport to bring a class action, but the parties have not briefed whether the alternative form of diversity jurisdiction established by the Class Action Fairness Act ("CAFA") is satisfied here. Diversity jurisdiction under CAFA might exist if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The complaint states that the class's claims exceed $5,000,000 in the aggregate, but the complaint does not plead the citizenships of any individual other than Brinson (presumably a Georgia citizen). And while the complaint alleges Providence's principal place of business (Georgia), it does not allege Providence's place of incorporation. Yet even if the complaint could be amended to satisfy the CAFA requirements codified at § 1332(d)(2)(A), we would still have to inquire into a number of other issues bearing on CAFA jurisdiction, including, but not limited to, the local-controversy exception and the home-state exception. *See id.* § 1332(d)(4); *see also id.* §§ 1332(d)(3), (5).

8

The district court's order of dismissal addressed some questions of justiciability, but it addressed none of the foregoing issues, which call into serious doubt our subject-matter jurisdiction over both the declaratory-relief and damages claims. Given the lack of briefing on these jurisdictional issues, combined with the potential need for amendment of the complaint or development of a factual record on the issue of jurisdiction, we **VACATE** the district court's order of dismissal and **REMAND** this case to the district court for further proceedings on the issue of subject-matter jurisdiction.[5] *See Belleri v. United States*, 712 F.3d 543, 548-49 (11th Cir. 2013) (vacating order of dismissal and remanding for district court's determination of jurisdictional issues in the first instance).

**VACATED AND REMANDED.**[6]

---

[5] At least one of our sister circuits has found the rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994), nonjurisdictional and subject to waiver, *see Polzin v. Gage*, 636 F.3d 834, 837-38 (7th Cir. 2011), but the district court on remand might also consider whether *Heck* bars Brinson's claims.

[6] Brinson's motion to certify questions to the Georgia Supreme Court is **DENIED without prejudice**.

TJOFLAT, Circuit Judge, dissenting:

The majority construe Count I of Ms. Brinson's complaint as merely "seek[ing] an order declaring the statute authorizing Georgia's private-probation system, O.C.G.A. § 42-8-101(a)(1), unconstitutional" and "seek[ing] a declaration that the Services Agreement is void for not having been properly approved or re-approved by Wayne County and the Wayne County State Court." *Ante* at 3. Count I does as the majority say, but Ms. Brinson also alleges in Count I two additional claims for relief the majority disregard. First, in Count I, Ms. Brinson seeks a declaration that the state court infringed her rights under the U.S. Constitution[1] by requiring her to pay fees to Providence and then revoking her probation and imprisoning her for failing to pay the fees. Second, as "such other and further relief as is just and equitable," she seeks a money judgment for the fees she paid.

As the majority fail to acknowledge these claims in Count I, they fail to recognize that such claims clearly do not fail due to mootness or lack of standing regardless of whether the Services Agreement was terminated before Ms. Brinson filed her complaint and regardless of whether Providence no longer provides

---

[1] The majority insist that when Ms. Brinson alleges in paragraph 27 of her complaint that "[n]either the Statute nor the form contracts used by this Defendant contain adequate provisions and procedures to prevent incarceration of probations on account of their indigency or to prevent the imprisonment of citizens because of failure to pay a debt," she invoked rights only under the Georgia Constitution. *Ante* at 3 n.2. But in the two paragraphs immediately following, paragraphs 28 and 29, she explicitly cites "the Fifth and Fourteenth Amendments to the United States Constitution." She does not refer to the Georgia Constitution until paragraph 30. Naturally, therefore, I construe Ms. Brinson as invoking rights under both the Georgia and U.S. Constitutions, and I struggle to see how the majority reach their narrower interpretation.

probation services in Wayne County.  I trust that the District Court on remand will quickly see what the majority does not and will question, as I do, why this Court felt that remanding was an appropriate use of judicial resources.

Having addressed the threshold jurisdictional issue, I would proceed to the merits.  The *sine qua non* of Ms. Brinson's claims is her indigent status.  In *Bearden v. Georgia*, 461 U.S. 660, 672–73, 103 S. Ct. 2064, 2073, 76 L. Ed. 2d 221 (1983), the Supreme Court held that revoking an indigent defendant's probation for failure to pay fines or restitution violates due process rights protected by the Fourteenth Amendment.[2]  I see no meaningful distinction between fines and restitution on the one hand and fees for probation services on the other.

Under this precedent, the court's imposition of the probation fees did not injure Ms. Brinson until the court revoked her probation and imprisoned her for failing to pay the fees.  At that point, she had a remedy.  She could have appealed the revocation and resulting imprisonment.[3]  She did not appeal, however. Consequently, the court's actions—in imposing the fees provision at sentencing and, subsequently, in revoking her probation and sentencing her to imprisonment—remain undisturbed.  In other words, the law considers the court's actions lawful.

---

[2] In *Bearden*, as in Brinson's case, the indigent made some of the payments and then failed to continue doing so.  *Id.* at 662–63, 103 S. Ct. at 2067.

[3] Under Georgia law, prisoners may appeal a state trial court's revocation of a probated sentence, and the Georgia Court of Appeal reviews the trial court's revocation on an abuse-of-discretion standard.  *Poole v. State*, 606 S.E.2d 878, 883 (Ga. Ct. App. 2004).

The Supreme Court, in *Heck v. Humphrey*, 512 U.S. 475, 485, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994), instructs that plaintiffs may not pursue damages actions that would, in effect, amount to a declaration that their state-court conviction and sentence, though undisturbed, are invalid.[4]  Here, Ms. Brinson's claim that her probation was improperly revoked due to her inability to pay unlawfully imposed fees is, in essence, an attack on the legality of the custody to which she was subject when she filed her complaint.  I would affirm the District Court's judgment on Count I under *Heck*.  I would affirm the judgment on Count II for the reasons given by the District Court.

---

[4] The plaintiff in *Heck* sought damages under 42 U.S.C. § 1983, alleging, inter alia, that defendant state officials had unreasonably and arbitrarily investigated him and had knowingly destroyed exculpatory evidence.  *Id.* at 477, 114 S. Ct. at 2368.  Thus, though he did not explicitly seek habeas relief, establishing the basis for his damages claim would have necessarily demonstrated the invalidity of his conviction.  *Id.* at 482, 114 S. Ct. at 2369.

12